UNITED PACIFIC INSURANCE COMPANY

v.

The UNITED STATES.

No. 163–73.

United States Court of Claims.

June 19, 1974.

As Amended Oct. 4, 1974.

Herman L. Fussell, Atlanta, Ga., attorney of record, for plaintiff; McNeill Stokes and Stokes, Boyd & Shapiro, Atlanta, Ga., of counsel.

Bernard M. Brodsky, Buffalo, N. Y., with whom was Acting Asst. Atty. Gen., Irving Jaffe, for defendant, Leslie H. Wiesenfelder, Washington, D. C., of counsel.

Before COWEN, Chief Judge, DURFEE, Senior Judge, and KASHIWA, Judge.

KASHIWA, Judge:

This is an action brought under the general jurisdiction of the court, 28 U.S.C. § 1491 (1970), for review of an administrative decision under the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1970). The plaintiff contests the decision of the Armed Services Board of Contract Appeals (hereinafter referred to as "ASBCA").

The parties filed cross motions for summary judgment. The material facts are not in dispute. Plaintiff's motion for summary judgment is allowed for reasons hereinafter stated.

On or about June 30, 1970, the Defense Supply Agency, an agency of defendant, and Knoxville Acoustical Co., Inc. entered into contract No. DSA 400–70–c–6216 for the recovering of roofs at the Defense General Supply Center, Richmond, Virginia, being Project PR 1–69 (Second Increment), warehouses 4, 10, and 12, and Project PR 1–69 (Third Increment), warehouses 30, 31, 32, and 33. The fixed contract price was $155,439.

Plaintiff, as surety, executed a payment and performance bond on said contract. Knoxville Acoustical Co. did not perform any work on said project and was defaulted under said contract by the Government. Plaintiff was then requested to perform said contract.

Plaintiff and the Government entered into a takeover agreement whereby both parties agreed that plaintiff would become the contractor on said construction contract. On or about June 1, 1971, plaintiff contracted with L. F. Still and Co. for the performance of all work under said contract and takeover agreement.

A dispute arose over the method of installing bituminous flashings on the firewalls of said project. The firewalls, about 8 inches wide, rose more than a foot above the warehouse roofs. Plaintiff contended that under the terms of the contract, the plaintiff could install the flashings on the firewalls in either of two ways. Either plaintiff could "cap and seal" the flashings or "return and seal" the flashings. Under the former method, the flashing would be installed up the vertical side of the firewalls and would be capped and sealed to the under-edge of the terra cotta coping which was located on the horizontal surface of the top of the firewall. The latter alternative, commonly referred to as returning and sealing, requires the removal of all terra cotta coping on the tops of the firewalls. Then new flashings would be installed up the vertical side of the firewalls, over the top of the firewall, and down the other vertical side of the firewall. New terra cotta coping would then be sealed on top of the flashing on te horizontal portion (tops) of the firewalls.

The Government contended that the contract did not allow for alternative methods of installing the flashings. Instead, the Government demanded that the more expensive return-and-seal method be used. Plaintiff urged that under the contract either the cap-and-seal method or the return-and-seal method was allowed. Under protest, the plaintiff complied with the Government's demand. The return-and-seal method was considerably more expensive than the cap-and-seal method.

This dispute centers around the legal interpretation of the contract documents and particularly the following provisions of the contract:

TP2–2 *GENERAL:* * * * *New bituminous flashings shall be installed in accordance with these specifications*

*at all locations where existing flashings are bituminous type.* [Emphasis supplied.]

\* \* \* \* \* \*

TP2–8 *FLASHINGS:*

a. *General:* All bituminous flashings shall be replaced. *Flashings shall be provided in the angles formed at walls and other vertical surfaces and where required to make the work watertight.* Except where metal flashings are indicated or are specified in other sections, bituminous-plastic base flashings shall be provided and installed before the top pouring and surfacing aggregate are applied to the roofing. The raggle or groove in which flashings are installed shall be not more than 14 inches nor less than 8 inches above the roof. Step flashings shall be used where vertical surfaces abut sloped roof surfaces. *Flashings shall be returned and sealed or capped and sealed to waterproof edges and ends.* [Emphasis supplied.]

\* \* \* \* \* \*

TP5–1:

*This section covers removing and reinstalling all coping as necessary in connection with replacement of flashings,* it being specifically understood that contractor shall provide all material necessary to replace broken or cracked coping irrespective of whether or not damage resulted from contractor's operations. [Emphasis supplied.]

■ For the extra work caused by the Government's demanding the returning and sealing of the flashings, plaintiff sought an equitable adjustment of the contract price. After an adverse finding by the contracting officer, plaintiff appealed to the ASBCA. The Board ruled adversely to the plaintiff and held that the contract required the flashings to be returned and sealed (ASBCA No. 17748). Plaintiff then filed suit in this court to recover $44,003.92.

The Board's decision turned entirely upon the application of law to the undisputed provisions of the contract. At page 8 of the decision, the Board stated that the issue was the interpretation of the specifications and drawings. Defendant concedes that under Wunderlich Act standards the issue of whether the subject construction contract requires installation of bituminous flashings on the tops of firewalls required an interpretation of the contract terms and, therefore, is a question of law which this court is free to answer independently of the Board's decision. The cases are legion which establish that an administrative board's interpretation of the language of the contract documents is a question of law and not binding on nor entitled to finality by the court. Martin Lane Co. v. United States, 432 F.2d 1013, 1015, 193 Ct.Cl. 203, 206–207 (1970); HRH Constr. Corp. v. United States, 428 F.2d 1267, 1271, 192 Ct.Cl. 912, 918 (1970).

Plaintiff contends that the contract allowed either of two alternative methods of installation and under the terms of the contract, plaintiff had the option of either capping and sealing the flashings or returning and sealing the flashings. On the other hand, the Government claims the contract required the return-and-seal method of installation.

The contract provisions expressly provide that the plaintiff may use either of the aforementioned methods. Section TP2–8 provides:

a. *General:* All bituminous flashings shall be replaced. Flashings shall be provided in the angles formed at walls and other vertical surfaces and where required to make the work watertight. \* \* \* Step flashings shall be used where vertical surfaces abut sloped roof surfaces. *Flashings shall be returned and sealed or capped and sealed to waterproof edges and ends.* [Emphasis supplied.]

The crucial sentence is, "Flashings shall be returned and sealed or capped and sealed to waterproof edges and ends." The word "or" unequivocally indicates that alternative methods of installation were authorized. The second

sentence states, "Flashings shall be provided in the angles formed at walls and other vertical surfaces and where required to make the work watertight." Thus, where the roof met a firewall, flashing was to be installed and the flashing was to extend vertically up the side of the firewall. But there is no requirement that the flashing extend along the horizontal top of the firewalls. Instead, rather than *requiring* the flashings to extend over the firewalls, the provision required the flashing to be applied where needed to make the work watertight.

▮ Plaintiff's interpretation of the contract is entirely consistent with all the provisions of the contract. It is an elementary rule of contract interpretation that all parts of a contract must be read together and harmonized if at all possible. Gelco Builders & Burjay Constr. Corp. v. United States, 369 F.2d 992, 177 Ct.Cl. 1025 (1966); Southern Constr. Co. v. United States, 364 F.2d 439, 176 Ct.Cl. 1339 (1966); Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 169 Ct.Cl. 384 (1965). A corollary to this general rule of law is the principle that all provisions of a contract are to be given effect and no provision is to be rendered meaningless. Jamsar, Inc. v. United States, 442 F.2d 930, 194 Ct.Cl. 819 (1971).

▮ The Government points to section TP2–2 which provides:

* * * New bituminous flashings shall be installed in accordance with these specifications at all locations where existing flashings are bituminous type.

The Government argues that plaintiff's position does not give effect to TP2–2. We are of the view that TP2–2 and TP2–8 are consistent with each other and are consistent with the plaintiff's interpretation of the contract. TP2–2 requires the installation of flashings in all locations where required in the specifications. TP2–8 is the specification defining "all locations" where the flashings are to be installed, i. e., "Flashings

shall be provided in the angles formed at walls and other vertical surfaces and where required to make the work watertight." The above language describes where the flashings were required to be installed. As noted, *supra,* where the roof met a firewall, flashing was to be installed, and the flashing was to extend vertically up the side of the firewall. However, there is no requirement that the flashing extend along the horizontal top of the firewalls. By the rule *expressio unius est exclusio alterius,* when language specifically provides where the flashings are required to be installed, there is manifested an intention that the flashings are not required to be installed elsewhere. Therefore, the contract did not require the installation of flashings on the tops of the firewalls.

Moreover, if references to "all" in TP2–2 and TP2–8 were meant to encompass the tops of the firewalls, the specific language in TP2–8 pertaining to where the flashings were required would have been unnecessary and redundant. The tops of the firewalls were to be covered *if* the plaintiff chose the return-and-seal method of installation. If, as the plaintiff desired, the cap-and-seal method were chosen, flashing would not be required on the tops of the firewalls.

The Government also points to section TP5–1 which reads as follows:

This section covers removing and reinstalling all coping as necessary in connection with replacement of flashings, it being specifically understood that contractor shall provide all material necessary to replace broken or cracked coping irrespective of whether or not damage resulted from contractor's operations.

TP5–1 pertains to the removal and installation of coping. This section does not state that all terra cotta copings shall be replaced and reinstalled but, instead, the coping is to be replaced "as necessary in connection with replacement of flashings, it being specifically understood that contractor shall provide all

material necessary to replace broken or cracked coping irrespective of whether or not damage resulted from contractor's operations." This language is consistent with TP2-8a. Had plaintiff chosen to cap and seal the flashings, under TP5-1 plaintiff would have been obligated to repair that coping damaged or cracked, irrespective of whether or not the plaintiff had caused those damages. Under TP5-1, had plaintiff chosen to return and seal the flashings on the firewalls, plaintiff would have, of course, removed all the coping in the process and would have reinstalled new coping on the top of the returned flashings.

Therefore, the plaintiff's interpretation of the contract, that it had the option to either return and seal or cap and seal the flashings, is a fair interpretation. When read as a whole, the contract provisions are entirely consistent with this interpretation and the interpretation is reasonable.

While the plaintiff's interpretation coordinates the provisions, the Government's interpretation forces the provisions to be contradictory. The Government erroneously and unreasonably construed the contract *absolutely* to require the flashings to be returned and sealed. As is described above, this process would require the removal of all existing terra cotta copings, the installation of new flashings over the top of the firewalls, and the subsequent reinstallation of new coping over the flashings. The Government's interpretation fails to abide by the established principle of law that all aspects of a contract are to be given effect and none are to be rendered meaningless. Jamsar, Inc. v. United States, *supra*. The Government's interpretation renders meaningless "or cap and seal" in TP2-8. It is impossible to make the Government's contentions consistent if the above language is given meaning.

While ignoring the crucial alternative language of the contract, the Government gives exaggerated emphasis to the general provisions of TP2-2 and TP2-8. Particularly, the Government gives strained meanings to "all bituminous flashings shall be replaced" (TP2-8) and "all locations" (TP2-2). Such heavy emphasis is misplaced in that when there are two clauses in a contract which are in any respect conflicting, the clause which is specially directed to a particular matter (TP2-8) controls over a clause which is general in its terms (TP2-2), although within its general terms the part may be included. W. E. Callahan Constr. Co. v. United States, 91 Ct.Cl. 538 (1940); Occidental Life Ins. Co. v. Marmaduke Corbyn Agency, 187 F.2d 553 (10th Cir. 1951). Clearly, the language "flashings shall be provided in the angles formed at walls and other vertical surfaces and where required to make the work watertight" is specific language focusing directly upon where the flashing is to be installed. Therefore, the specific language should be given effect over the general language relied upon by the Government.

Moreover, under the Government's interpretation of the contract, section TP5-1 is unnecessary and meaningless. If the Government is correct, section TP5-1 should simply read, "All terra cotta copings shall be replaced." But, clearly, TP5-1 expressly provides that all the terra cotta copings need not be replaced. Instead, TP5-1 provides that if in the plaintiff's operation coping is removed, as would happen if the return-and-seal method of installation were utilized, the plaintiff was obligated to install new coping. On the other hand, TP5-1 provides that even if all the coping is not removed and reinstalled, the plaintiff was obligated to replace any old and broken coping, irrespective of whether such damage resulted from the work of the plaintiff. This language is obviously consistent with the cap-and-seal method of installing the flashings in that such method would not require the removal of all the copings.

It seems that the logical consequence of the Government's interpretation of the contract is to create an ambiguity. The Government places heavy emphasis upon TP2-2 and TP2-8, which in perti-

nent part provides "flashings shall be installed * * * at all locations where existing flashings are bituminous type" and "all bituminous flashings shall be replaced." Contrary to the plaintiff's contentions, the Government urges that the use of such language means that the flashings on the tops of the firewalls were to be replaced. If such is the natural meaning of the words, the words are absolutely inconsistent with TP2–8 which provides "flashings shall be returned and sealed *or* capped and sealed to waterproof edges and ends." So it must be concluded that if all flashings on the tops of the firewalls were to be replaced, the language in TP2–8 referring to capping and sealing would not require placing flashings on the tops of firewalls and would be, if meaningless, also confusing.

■■ Furthermore, it is well established that if a drawing or specification is ambiguous and the contractor follows an interpretation that is reasonable, this interpretation will prevail over one advanced by the Government, even though the Government's interpretation may be a more reasonable one since the Government drafted the contract. Peter Kiewit Sons' Co. v. United States, 109 Ct.Cl. 390 (1947). The Government as drafter of the contract had a duty to shoulder the major task of seeing within a zone of reason that words of the contract correctly and concisely communicate the proper notions and intentions of the parties, and the Government must bear the burden of a failure to carry that responsibility. L. Rosenman Corp. v. United States, 390 F.2d 711, 182 Ct.Cl. 586 (1968). The Government drafted this

contract and as a result, any ambiguities that were created should be strictly construed against the Government. Merritt v. United States, 95 Ct.Cl. 421 (1942); Wunderlich Contracting Co. v. United States, 166 F.Supp. 741, 143 Ct.Cl. 876 (1958).

In concluding, we find that the only reasonable and consistent interpretation is that the Government had no right to demand the returning of flashings over the tops of the firewalls and removing and replacing all the terra cotta coping. This court finds, for the reasons above stated, that the plaintiff's interpretation that the contract allowed plaintiff either of two alternative methods of installation as expressly provided in TP2–8, "Flashings shall be returned and sealed or capped and sealed to waterproof edges and ends," is the proper interpretation.

We, therefore, allow plaintiff's motion for summary judgment and deny defendant's cross motion for summary judgment. This case is remanded to the ASBCA for the holding of such hearing or hearings as may be deemed advisable and for a determination, in the first instance, of the precise amount of plaintiff's recovery, with appropriate proceedings under Pub.L. 92–415 (codified at 28 U.S.C. § 1491 (Supp. II, 1972)), this opinion and the General Order No. 3 of 1972.[1] Further judicial proceedings are suspended pending completion of the remand proceedings. The duration of the stay of proceedings shall be not longer than six months from the date of this judgment. The attorney of record for plaintiff is designated as the responsible reporting attorney under paragraph 9(a) of General Order No. 3.

1. Previous proceedings covered by General Order No. 3 of 1972 are now provided for in

Rules 149, 150 effective October 1, 1974.

*