SEVILLE CONSTRUCTION,
INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 93–585C.

United States Court of Federal Claims.

March 29, 1996.

Chris Georgoulis, New York City, for plaintiff.

Lance J. Lerman, Washington, D.C., for defendant. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Assistant Director, Washington, D.C., Deidre Payne, U.S. Army Corps of Engineers, New York City, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on the parties' cross motions for summary judgment, filed

pursuant to RCFC 56. For the reasons set forth below, the court grants defendant's motion for summary judgment and denies plaintiff's cross motion.

## FACTS

The following material facts are undisputed. On September 3, 1990, Seville Construction, Inc. ("Seville") entered into contract No. DACA 51–90–C–0063 with the Army Corps of Engineers (the "Corps") to renovate the heating, ventilation and air conditioning ("HVAC") system in Building No. 407 at Fort Hamilton, Brooklyn, New York. The $707,000 contract calls, in part, for the installation of dampers [1] in the ducts of the HVAC system.

Various provisions of the contract govern the installation of the dampers. Section 21.9 of the contract specifications states that "fire dampers conforming to UL555 ... shall be provided where shown." (Pl.'s Ex. 3.) UL555 is the Underwriters Laboratory designation for a fusible link fire damper. According to the "Specifications and Drawings for Construction" provision of the contract, FAR 52.236–21(c), "as shown" or similar words require the contractor to refer to the drawings accompanying the contract for clarification unless otherwise stated. (Def.'s App. at 37.) A pre-bid amendment to the contract added a note to the drawing entitled "Site Plan and Mechanical Room." The amendment provides, in part, that

> [i]n each of the seven ventilation zones, there shall be a smoke/fire detector in the duct exiting the heating ventilating (HV) unit. There shall be a fire/equipment control panel in each of the seven mechanical rooms. At each location where a supply duct penetrates a (one, two hour, or other) fire rated or non-combustible wall, partition, or floor there shall be a smoke/fire damper....

(Def.'s App. at 6–7.)

The drawings contain over a hundred symbols for the installation of dampers. Note 3,

which appears on each of the HVAC floor plans, reads:

> Where ductwork penetrates fire rated walls and/or floors provide and install a combination smoke-fire damper with access door. Note: Combination smoke-fire damper [sic] are to be provided and installed by contractor, wiring to a common panel. Panel to be located in mechanical room(s). (Control panel & dampers "Ruskin" or equal).

(Def.'s App. at 1, 2, 2A; Pl.'s Exs. 9–11.) Each of the floor plans also contains a variation of an additional note, with an arrow drawn to one of the damper symbols, which states: "At all corridor walls install $12 \times 4$ top register w/combination smoke/fire damper. Typical for all supply air shown unless otherwise noted." (Def.'s App. at 1, 2, 2A; Pl.'s Exs. 9–11.)

On August 1, 1991, Seville submitted a request for approval of fusible link fire dampers. This request was approved by the Corps subject to the code C* designation: "Approved except as noted on drawings. Refer to attached sheet resubmission required." (Pl.'s Ex. 6 at 3.) The approval further required plaintiff to show damper connections to smoke and fire panels. (Def.'s App. at 13.)

Plaintiff installed fusible link fire dampers at all locations except in the seven mechanical rooms, where it installed combination smoke/fire dampers. The Corps issued a "Notice of Non–Compliance" on August 22, 1991, for failing to install required smoke/fire dampers in ductwork passing through all the buildings' fire rated walls. (Def.'s App. at 14.) The Corps then verbally instructed Seville to install smoke/fire dampers in the ductwork. In a letter dated October 24, 1991, plaintiff objected to this instruction and contended that smoke/fire dampers were only required in the mechanical rooms. (Def.'s App. at 15.) The Corps again responded by stating that smoke/fire dampers were required throughout the building.

---

**1.** A damper is a mechanical vent that controls the air flow inside the ducts of the HVAC system. There are two types of dampers at issue in this case. A "fusible link fire damper" automatically closes when it is exposed to heat, to prevent the spread of fire within the HVAC ducts. A combination "smoke/fire damper" similarly closes when exposed to heat. However, it contains a smoke detector which also closes the damper when exposed to smoke.

An inspection in early 1992 revealed that smoke/fire dampers had not been installed, and on February 3, 1992, the Corps directed plaintiff to install the combination smoke/fire dampers at all locations indicated on the contract drawings. Following a March 11, 1992 meeting between Seville and the Corps, plaintiff stated it would install the smoke/fire dampers, although it continued to dispute such a contractual obligation. (Def.'s App. at 30.)

On April 13, 1993, Seville submitted a claim for $326,130.29 to the contracting officer, contending that the installation of smoke/fire dampers was not required under the contract·and the directive to install them constituted additional work. (Def.'s App. at 31.) After not receiving a final decision on its claim, plaintiff filed a complaint in this court on September 22, 1993, on the basis that its claim was deemed denied. Defendant filed its motion for summary judgment on July 5, 1995. Plaintiff filed its cross motion for summary judgment on August 12, 1995.

Plaintiff argues that the contract calls for fusible link dampers pursuant to specification 21.9 and the symbols on the contract drawings. If there is any conflict in the contract, plaintiff notes that FAR 52.236–21(a) commands that the specifications control. FAR 52.236–21(a) provides that "[i]n case of difference between drawings and specifications, the specifications shall govern." 48 C.F.R. 52.236–21(a) (1990). Defendant asserts that specification 21.9 instructs the installation of fusible link dampers only "where shown" on the drawings, and the drawings, because of several notes, call for smoke/fire dampers at all locations. Defendant urges that any contractual discrepancies should have been submitted to the Corps for clarification, pursuant to FAR 52.236–21(a), which further states that "[i]n case of discrepancy in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer, who shall promptly make a determination in writing." *Id.*

## DISCUSSION

### I. Summary Judgment

■ Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c). Genuine issues of material fact are those that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In the instant case, the parties have filed cross motions for summary judgment. A cross motion is a party's claim that it alone is entitled to summary judgment. The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988). In this case, the court must scrutinize each motion on its own merits. "Accordingly, this court must draw all reasonable inferences against the party whose motion is under consideration." *Robinson Contracting Co. v. United States*, 16 Cl.Ct. 676, 680 (1989), *aff'd*, 895 F.2d 1420 (Fed.Cir.1990). The court is not required to grant judgment as a matter of law for one party or the other; it may deny both. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987). Interpretation of the contract at issue is a matter of law which the court may resolve on summary judgment. *Fry Communications, Inc. v. United States*, 22 Cl.Ct. 497, 503 (1991); *see also P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed.Cir. 1984). The court finds no genuine issues of fact which would preclude summary judgment in this case.

### II. Contract Interpretation

■ In construing a disputed contractual obligation, the court must first determine whether an ambiguity exists in the contract. *Gresham, Smith & Partners v. United States*, 24 Cl.Ct. 796, 802 (1991). A contract is ambiguous if it is susceptible to differing interpretations, each consistent with the language of the contract. *Sun Shipbuilding & Dry Dock Co. v. United States*, 183 Ct.Cl. 358, 372, 393 F.2d 807 (1968). A contract may also be found ambiguous if no interpretation can eliminate internal contradictions in the contract. *Newsom v. United States*, 230

Ct.Cl. 301, 305, 676 F.2d 647 (1982). Further, an interpretation which gives meaning to all parts of the contract is preferred to one that renders parts of the contract meaningless. *Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed.Cir.1985) (citing *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1555 (Fed.Cir.1983)); RESTATEMENT (SECOND) OF CONTRACTS § 203(a) (1981).

■ Plaintiff claims, without asserting a conflict in the contract, that the contract specifications call for fusible link fire dampers in all locations but the mechanical rooms. However, plaintiff not only ignores the phrase "where shown" and its command to refer to the drawings, but further ignores all instruction on the drawings to install smoke/fire dampers. This interpretation yields the erroneous result that the contract does not call for any smoke/fire dampers except for in the mechanical rooms. If the contract is interpreted in the manner that plaintiff suggests, the "where shown" language and the notes on the drawings would have no meaning. Such an interpretation which renders a portion of the contract meaningless should be rejected. *See United Pac. Ins. Co. v. United States,* 204 Ct.Cl. 686, 692, 497 F.2d 1402 (1974).

Plaintiff alternatively argues that if there is a conflict within the contract, it is between the specifications and the drawings. Therefore, fusible link dampers allowed by the specifications are compelled under FAR 52.236–21(a). This argument fails for two reasons. First, plaintiff's argument ignores the words "where shown" in specification 21.9. These words underscore the need to consult and follow the drawings. The specification directing to install fusible link dampers "where shown" does not conflict with the drawings, for it is the drawings which alone define where UL555 standard dampers are required. Second, plaintiff claims that specification 21.9 calling for dampers that meet the UL555 standard conflicts with the drawings. To complete this argument, plaintiff must also assert that the drawings call for smoke/fire dampers. Plaintiff never does so because the drawings cannot be interpreted to call for either type of damper. There

is an unresolvable internal conflict—an obvious discrepancy—within the drawings. Thus, if any conflict exists, it is within the drawings themselves.

Plaintiff's intuitive sense of a conflict in the contract and reliance on the FAR 52.236–21(a) provision are proper. However, plaintiff's misunderstanding of the true nature of this conflict leads to its misplaced reliance on the provision's phrase concerning a difference between specifications and drawings. The contractual conflict is properly resolved by the next sentence of the provision dealing with discrepancies within the drawings. FAR 52.236–21(a) clearly and explicitly delineates between different contractual conflicts and their remedies, based upon the nature of the conflict. The specifications govern the drawings in the case of a difference between the two. FAR 52.236–21(a). However, where the nature of the conflict is a discrepancy within the drawings, as in the instant case, the contractor has a duty to submit the conflict to the contracting officer. *Id.*

### III. Ambiguous Drawings

Upon examining the contract, the court finds that an obvious discrepancy exists within the drawings. The drawings call for two different types of dampers, some fusible link damper symbols appear in the drawings, while several notes call for smoke/fire dampers at all locations, thereby creating the confusion. In an affidavit for plaintiff, an experienced architect states that "the quality of the draftsmanship is very poor and many of the symbols are unintelligible." (Pl.'s Ex. 2 at 3.) The court found over one hundred non-mechanical room damper locations marked on the three floor plans. While at least several identifiable fusible link fire damper symbols appear on the floor plans, several notations on the drawings instruct that smoke/fire dampers are to be installed at all locations. This is a glaring gap which should have been apparent to plaintiff. Plaintiff's failure to satisfy its contractual duty of inquiry under FAR 52.236–21(a) concerning the discrepancy within the drawings, renders its claim invalid.

Plaintiff's claim that the drawings show fusible link dampers and defendant's assertion that the drawings call for the use of

smoke/fire dampers in all locations are both correct. However, neither party offers an interpretation that cures the ambiguity. Defendant never acknowledges the fusible link symbols, while plaintiff characterizes the notes as general instructions to be read with the amendment requirement to place smoke/fire dampers in the mechanical rooms. In construing a similar note for the placement of dampers, this court explained that "[t]he word 'all' in the ... note to the drawings reasonably could not be construed to apply to some of the fire partitions and walls shown on the drawings. 'All means all and not substantially all....'" *Blinderman Constr. Co. v. United States*, 17 Cl.Ct. 860, 864 (1989) (quoting *National Steel & Shipbuilding Co. v. United States*, 190 Ct.Cl. 247, 267, 419 F.2d 863 (1969)). Unlike the amendment to the mechanical room drawings, the notes, which appear on each of the three floor plans, are in no way limited to the mechanical rooms. Plaintiff's characterization of the notes therefore fails, leaving an interpretation which cannot avoid the glaring discrepancy within the drawings.

Finally, plaintiff suggests that defendant's directives to install smoke/fire dampers occurred only after defendant discovered that fusible link dampers did not meet National Fire Code standards and amounted to a change in contractual obligations. This contention is based on the premise that the contract unambiguously calls for fusible link dampers, an interpretation the court rejects. Before exploring any contractual changes or improper motivations, the court must determine what the contract obligations dictate. In this case, there is an obvious discrepancy in what type of dampers are required by the drawings. There has been no attempted change to the contract, only differing interpretations due to its ambiguity. Because the discrepancy occurs within the drawings, the dispute is governed by the FAR 52.236–21(a) command that the contractor submit the discrepancy to the contracting officer.

The contract is a poor manifestation of defendant's intentions with respect to the installation of HVAC dampers. Any attempt to articulate a coherent plan is lost in confusion around the type of damper shown on the drawings. The contract drawings are internally inconsistent in their references to the dampers. The court does not wish to penalize a contractor because of sloppy drafting by the government; however, the court must recognize the contractor's burden to seek clarification of any discrepancy within the contract drawings. FAR 52.236–21(a). Such a duty of inquiry aids the expeditious and just administration of government contracts. Because plaintiff failed to notify the contracting officer of the discrepancies within the drawings, it must lose on its claim of equitable adjustment.

## CONCLUSION

Because there are no genuine issues of material fact, and upon consideration of the facts in the light most favorable to each non-movant, the court grants defendant's motion for summary judgment and denies plaintiff's cross motion for summary judgment. Plaintiff's unjust enrichment claim is dismissed, with prejudice, pursuant to plaintiff's voluntary withdrawal of the claim. The Clerk is directed to dismiss the complaint. No costs.

**IT IS SO ORDERED.**