**NIELSEN–DILLINGHAM BUILDERS, J.V., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**No. 97–713C.**

United States Court of Federal Claims.

Jan. 6, 1999.

---

G. Patrick Connors III, San Diego, CA, for plaintiff.

John J. Field, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## ORDER

MILLER, Judge.

This matter is before the court on defendant's motion for summary judgment. The issues under consideration are (1) whether certain contract documents contain an ambiguity; (2) whether such ambiguity is latent or patent; (3) if latent, whether the contractor's interpretation of the contract documents was reasonable; and (4) if patent, whether the contractor conducted an inquiry sufficient to clarify the nature of its obligation. Argument is deemed unnecessary.

## FACTS

The following facts are undisputed, unless otherwise noted. On November 15, 1994, the U.S. Department of Veteran's Affairs (the

"VA") issued a Request for Proposals (the "RFP") for the construction of a seismic correction clinical outpatient clinic at the VA Medical Center in Sepulveda, California, Project No. 665–152A. The RFP identified the third of four bid items as "Telecommunications and Data Cabling." Bidders were instructed to bid on all four items. On February 21, 1995, Nielsen–Dillingham Builders, Joint Venture ("plaintiff"), was awarded Contract No. V101DC01129 in the amount of $46,753,000.00.

In September 1995 plaintiff procured Computer Cabling Contractors Corporation ("CCCC") as a subcontractor to perform electrical work for the project. By letter dated February 14, 1996, CCCC advised plaintiff that, in accordance with its interpretation of the contract, its bid did not reflect costs for the installation of telephone cabling. By letter dated April 11, 1996, CCCC restated to plaintiff that the furnishing and installation of telephone cabling was beyond CCCC's scope of work. In support of its position, CCCC directed plaintiff's attention to language in the Electrical Narrative incorporated by reference into the RFP, as well as contents from an Electrical Design Handbook (the "handbook") issued by the VA in 1989. The pertinent statement from the Electrical Narrative recites: "All telephone system cabling is provided by a telephone company." Chapter 9 of the handbook states: "The local telephone company or telephone system contractor will furnish and in-

stall all telephone equipment and wiring. The VA will provide the cable raceway."

Notwithstanding its assertion that provisions for telephone cabling were beyond the scope of work identified in the contract specifications, CCCC informed plaintiff that it would furnish and install the telephone cabling through the issuance of an additional proposal request. On June 12, 1996, CCCC submitted a pricing summary identifying $149,906.00 as the cost for the addition of "Telephone Cable & Termination To Original Bid." Upon receipt, plaintiff forwarded a letter, CCCC's pricing summary, and the April 11 communication to the VA's Senior Resident Engineer requesting that the VA advise whether the contract documents obligated plaintiff to furnish and install telephone cabling.

The VA's response to plaintiff, dated June 14, 1996, cites numerous instances within the contract documents "overwhelmingly indicat[ing] that telephone cable is within the scope of the contract." For example, the introductory paragraph of the section of the specifications entitled, "Telephone and Data Systems Equipment," states that the contractor shall "[p]rovide a complete system of cabling from the main terminal to the workstations, including risers, horizontal distribution and terminations. Reference to manufacturers and suppliers is intended to establish the standards of performance and quality."[1] The paragraphs that follow the

---

1. The June 14, 1996 letter from the VA also included the following provisions from the contract documents to support the VA's position:

"Work includes, but is not limited to ... telephone and data cabling...."

"Offerors shall submit a price for ... telephone and data cabling."

"Item III: Telecommunications and Data Cabling" (listed as bid item)

"Item III, Telecommunications and Data Cabling: Work includes telecommunications and data cabling."

"This Section Includes All Design, Labor, Materials, and Equipment to Provide a Complete, Operational Electrical System Including ... Telephone and data system cabling."

"Include all electrical, signal and communications systems, including telephone and fire alarm, as described in this Outline Specification."

"Electrical and telephone services will be connected to the existing VA Sepulveda Medical Center distribution systems."

"Contractor's designers and engineers shall coordinate all aspects of the electrical, telephone, and signal and communications systems with the Architect."

"During the design phase, attend meetings at the Architects Los Angeles Office as requested by the Architect to coordinate the design of the electrical, telephone and signal and communications systems with the Architect, other designers, and contractors."

"Provide all design, labor, materials and equipment necessary to complete the electrical, telephone and signal and communications systems for this project as described in the Design Building Drawings and Specifications."

"Under this section, provide the design and construction of the complete building electrical, telephone and signal and communications systems."

"The electrical, telephone and signal and communications systems are to be complete, operational, and in compliance with all applicable codes."

foregoing mandate establish the technical and performance standards for "Workstation Cabling," "Distribution Cabling," and "Fiber-optics Cabling"; the subparagraph under Workstation Cabling devoted entirely to "Voice" requires "Level 3, four pair, unshielded twisted pair, 24 AWG, PVC sheath, beige color. AT & T Product No. 104316807 or equivalent." Furthermore, separate subparagraphs set forth similar cabling requirements for "Low speed data" and "High speed data."

Insofar as the handbook maintains that the local telephone company or telephone system contractor would furnish and install telephone equipment and wiring, the VA in its June 14, 1996 letter took the position that "this design requirement was voided by the request for a separate bid item to install telephone and data cabling." The VA approached the inconsistency between the Electrical Narrative and the contract specifications by explaining:

> The statement [,"[a]ll telephone system cabling is provided by a telephone company,"] only requires the telephone cabling to be supplied by a telephone company. A strict interpretation of this requirement would be that you are required to have the cabling installed by a telephone company. We do not believe this to be necessary, as long as the cabling meets the technical requirements, and the installation practices meet all code and contract provisions.

On August 5, 1996, plaintiff submitted to the VA a change estimate in the amount of $149,906.00, as well as a request for a contracting officer's decision to determine whether the contract required plaintiff to furnish and install the telephone cabling. On October 18, 1996, the contracting officer denied plaintiff's request for additional compensation on the ground that "the requirement for a telephone cabling system is clear [in the specifications]. The fact that a separate bid item, to which [plaintiff] responded in [its] cost proposal, was included in numerous contract document sections reinforces my opinion." The decision was predicated on substantially the same provisions of the contract documents as those referenced in the VA's June 14, 1996 letter. Plaintiff appealed the decision to the VA Board of Contract Appeals. Because the filing was not made within the time prescribed by governing section of the Contract Disputes Act of 1978, 41 U.S.C. § 606 (1994), the board dismissed plaintiff's appeal for lack of jurisdiction. Plaintiff then filed the instant claim for $149,906.00, plus interest.

## DISCUSSION

Summary judgment will be granted pursuant to RCFC 56 when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact qualifies as material if it would affect the outcome of the case. *See id.* at 248, 106 S.Ct. 2505. Inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party does not shoulder the burden of demonstrating the absence of a genuine issue of material fact; rather, the moving party need only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmovant "must proffer countering evidence sufficient to create a genuine factual dispute." *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed.Cir. 1987). Because issues of contract interpretation involve questions not of fact, but only of law, plaintiff's claim is appropriate for resolution by summary judgment. *See Dalton v. Cessna Aircraft Co.,* 98 F.3d 1298, 1305 (Fed. Cir.1996); *Government Sys. Advisors, Inc. v. United States,* 847 F.2d 811, 813 n. 1 (Fed. Cir.1988).

■ Initially, it must be determined whether an ambiguity is present regarding plaintiff's alleged obligation to furnish and

install telephone cabling. A contract must be interpreted as a whole and construed so as to " 'effectuate its spirit and purpose' and to give 'reasonable meaning to all of its parts.' " *See Northrop Grumman Corp. v. Goldin,* 136 F.3d 1479, 1483 (Fed.Cir.1998) (quoting *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)). Meaning to all of a contract's sections should be afforded so as to avoid "conflict or surplusage of its provisions." *Granite Constr. Co. v. United States,* 962 F.2d 998, 1003 (Fed.Cir.1992). Each part of a contract must be read together and harmonized, if at all possible. *See T. Brown Constructors, Inc. v. Pena,* 132 F.3d 724, 730–31 (Fed.Cir.1997); *United Pac. Ins. Co. v. United States,* 204 Ct.Cl. 686, 691–92, 497 F.2d 1402, 1405 (1974). If two or more clauses of a contract conflict, the clause that is specifically directed to a particular matter controls over a clause that is general in its terms. *See United Pac.,* 204 Ct.Cl. at 694, 497 F.2d at 1406. Although parties to a contract may disagree as to the meaning or implication of certain provisions, a contract is not necessarily thereby rendered ambiguous. *See Community Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1578 (Fed.Cir.1993). Ambiguity results from drafting that "is susceptible of two different and reasonable interpretations, each of which is found to be consistent with the contract language." *Id.* at 1579.

Plaintiff contends that the contract documents "clearly and unambiguously state that the telephone cabling would be provided by a telephone company." Plf's Br. filed Sept. 25, 1998, at 4. Plaintiff points out that the Electrical Narrative is the only document denoting expressly who shall bear responsibility for furnishing and installing the telephone cabling and that, "[c]onversely, there are no provisions contained in the RFP which provide that someone other than [plaintiff] or its subcontractor would provide the data cabling." *Id.* at 3.[2]

Plaintiff's assertion that the contract is unambiguous is belied by the stark conflict between the Electrical Narrative and the RFP. The contract provisions cited in the VA's June 14, 1996 letter to plaintiff establish beyond doubt that the RFP obligated the contractor to furnish and install telecommunications and data cabling. It is undisputed that (i) the RFP identifies "Telecommunications and Data Cabling" as a separate and distinct bid item; (ii) section 16010–1.13 of the RFP directs specifically the contractor to "[p]rovide a complete system of cabling;" and (iii) section 16010–1.13.B.2, *inter alia,* defines the technical requirements for the voice cable. Despite the precise and comprehensive instruction directed at the contractor, the Electrical Narrative indicates, without qualification, that all telephone system cabling will be provided by a telephone company.

The RFP and the Electrical Narrative by their terms are relatively similar in specificity. Contrary to plaintiff's contention, the Electrical Narrative is not the only bid document identifying the entity responsible for the installation of telephone cabling; as discussed earlier, the RFP unambiguously imposes upon the contractor the obligation to furnish and install telephone cabling. Thus, plaintiff's assertion that the language in the Electrical Narrative is controlling because it contains a clause directed more specifically to the matter at issue than any other clause in the RFP is unpersuasive. *See United Pac.,* 204 Ct.Cl. at 694, 497 F.2d at 1406. Moreover, permitting the Electrical Narrative to govern would render considerable portions of the RFP useless, meaningless, or otherwise surplusage. The court is precluded from entertaining such an interpretation. *See Granite Constr.,* 962 F.2d at 1003; *United Pac.,* 204 Ct.Cl. at 693–94, 497 F.2d at 1406.

 Plaintiff's remaining contention that the Electrical Narrative confirms that "[i]t is not uncommon in the industry for the telephone company to install the telephone cabling," Plf's Br. filed Sept. 25, 1998, at 4, is equally unconvincing. Custom and usage or trade practices properly may assist in con-

---

2. In its complaint plaintiff relied on the provision from the handbook stating that "the local telephone company or telephone system contractor will furnish and install all telephone equipment and wiring." Compl. filed Oct. 17, 1997, ¶ 4.

Plaintiff's opposition declines to rely on this provision to advance its argument, presumably because it permits either the telephone company or the telephone system contractor, *i.e.,* plaintiff, to furnish and install the telephone cabling.

tract interpretation when the contract documents fail to provide sufficient direction or guidance. *See Fortec Constructors v. U.S.,* 760 F.2d 1288, 1291 (Fed.Cir.1985). In the instant matter, however, the ambiguity does not arise from the absence of language, but rather, from ample, yet conflicting, language. Therefore, resort to custom and usage or trade practices should not play a dispositive role.

Having concluded that ambiguity is present, the court will consider the doctrine of *contra preferentem,* which places the risk of ambiguity upon the drafter of the contract. *See Interstate Gen. Gov't Contractors, Inc. v. Stone,* 980 F.2d 1433, 1434 (Fed. Cir.1992). The Court of Claims, predecessor to the Federal Circuit and the Court of Federal Claims, explained the basis for the doctrine:

> [I]t is well established that if a drawing or specification is ambiguous and the contractor follows an interpretation that is reasonable, this interpretation will prevail over one advanced by the Government, even though the Government's interpretation may be a more reasonable one since the Government drafted the contract. The Government as drafter of the contract had a duty to shoulder the major task of seeing within a zone of reason that words of the contract correctly and concisely communicate the proper notions and intentions of parties, and the Government must bear the burden of a failure to carry that responsibility. The Government drafted this contract and as a result, any ambiguities that were created should be strictly construed against the Government.

*United Pac.,* 204 Ct.Cl. at 695, 497 F.2d at 1407 (citations omitted).

An exception to the general rule of *contra preferentem* applies if the ambiguity is so patent and glaring that it warrants application of the "patent ambiguity" doctrine. *See Triax Pac., Inc. v. West,* 130 F.3d 1469, 1474 (Fed.Cir.1997); *Beacon Constr. Co. v. United States,* 161 Ct.Cl. 1, 6–7, 314 F.2d 501, 503–04 (1963); *see also Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 997 (Fed.Cir.1996) (defining patent ambiguity as one that is "obvious," "gross," "glaring," or "substantial"). "The existence of a patent ambiguity in a government contract 'raises the duty of inquiry, regardless of the reasonableness of the contractor's interpretation.'" *Triax Pac.,* 130 F.3d at 1474 (quoting *Fortec Constructors,* 760 F.2d at 1291). The duty requires the contractor to inquire of the correct meaning of the contract prior to submitting a bid. *See Newsom v. United States,* 230 Ct.Cl. 301, 303, 676 F.2d 647, 649 (1982). If a contractor fails to conduct such an inquiry, a patent ambiguity in a contract will be resolved against the contractor.[3] *See id.*

To the extent that an ambiguity was created by the conflicting provisions between the RFP and the Electrical Narrative, plaintiff contends that such ambiguity is latent and not patent. Plaintiff notes that the Electrical Narrative states specifically that the telephone cabling will be provided by a telephone company and argues that the only way that this provision "can be said to create a patent and glaring ambiguity is if [plaintiff] had knowledge that the VA had an unwritten and secret intent not to retain a telephone company to install the telephone cabling." Plf's Br. filed Sept. 25, 1998, at 7.

3. The Federal Circuit articulated recently the rationale underlying the patent ambiguity doctrine:

> The patent ambiguity doctrine is a court-made rule that is designed to ensure, to the greatest extent possible, that all parties bidding on a contract share a common understanding of the scope of the project. That objective is particularly important in government contracts, in which significant post-award modifications are limited by the government's obligation to use competitive bidding procedures and by the risk of prejudice to other potential contractors. In addition, the duty of inquiry prevents contractors from taking advantage of ambiguities in government contracts by adopting narrow in-

> terpretations in preparing their bids and then, after the award, seeking equitable adjustments to perform the additional work the government actually wanted.

*Triax Pac.,* 130 F.3d at 1475 (citations omitted). Because the existence of a patent ambiguity shields the Government from the consequences of its own poorly drafted document, the doctrine has narrow application, particularly, "to contract ambiguities that are judged so 'patent and glaring' that it is unreasonable for a contractor not to discover and inquire about them." *Id.* (quoting *Beacon Constr. Co.,* 161 Ct.Cl. at 7, 314 F.2d at 504).

 

Plaintiff's argument is rather curious. The law teaches that a contract is subject to a patent ambiguity if it contains facially inconsistent provisions that would place the reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties. In the case at bar, the numerous provisions in the RFP directing the contractor to furnish and install telephone cabling conflict directly and openly with the provision in the Electrical Narrative. This created a patent ambiguity. It is difficult to comprehend how a patent ambiguity could arise from an unwritten and secret intent held by the VA, regardless of whether plaintiff had knowledge or was aware of such intent.

The contract documents permitted at least two reasonable interpretations, thereby creating an ambiguity. Although the doctrine of *contra preferentem* places the risk of ambiguity upon the drafter, the plain and patent nature of the ambiguity shifted this risk from the VA to plaintiff and imposed on plaintiff a duty to inquire.[4] Because plaintiff failed to discharge this duty, it is precluded from seeking a change estimate for work reasonably contemplated within the scope of the contract. That plaintiff's interpretation of the pertinent provision of the Electrical Narrative is reasonable does not alter this outcome.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion for summary judgment is granted. Defendant's request, in the alternative, to strike plaintiff's opposition on procedural grounds and enter judgment on its

motion for summary judgment as unopposed is denied.[5] The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**

---

4. Defendant contends that one potential contractor did make such an inquiry. During a pre-bid conference, the following question and answer exchange occurred between one of the bidders and representatives of the VA. This exchange, *inter alia*, was recorded in a document dated December 20, 1998, and subsequently made available to the bidders. Individuals on behalf of plaintiff were in attendance.

The Electrical Narrative required conduit only for the telephone system. Specification 16010, page 6 calls for telephone and data cable to be installed. Also, who provides the telephone switching system? How is it tied to the PA system? Please advise.

Response: It is a conduit and cable system. The telephone switch is in the IRM Building. Coordinate with VA Telecommunications for the telephone/P.A. Interface.

5. After repeated assurances from counsel that plaintiff's responsive brief due on July 20, 1998, would be forthcoming, on September 18, 1998, no response having been filed as of that date, the court ordered plaintiff by October 1, 1998, to show cause why defendant's motion for summary judgment should not be granted as unopposed. Plaintiff's demonstration of cause by facsimile transmission to chambers dated October 16, 1998, is deemed adequate.