# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Benjamin Medina | )    ASBCA No. 60289 |
| | ) |
| Under Contract No. DACA63-5-12-0384 | ) |

APPEARANCE FOR THE APPELLANT:        Mr. Benjamin Medina

APPEARANCES FOR THE GOVERNMENT:     Thomas H. Gourlay, Jr., Esq.
                                                Engineer Chief Trial Attorney
                                              Arthur B. Archambeau, Esq.
                                              Engineer Trial Attorney
                                              U.S. Army Engineer District, Fort Worth

## OPINION BY ADMINISTRATIVE JUDGE WOODROW

This case involves a leasehold contract between appellant, Benjamin Medina (the lessor), and the U.S. Army Corps of Engineers (Corps or government) for a residence located in Cypress, Texas, as a part of the U.S. Army Family Housing Program. In his claim, Mr. Medina alleges entitlement to $9,200.00 on Contract No. DACA63-5-12-0384 for restoration of the leased premises after the expiration of the lease term. Mr. Medina timely appeals from a contracting officer's final decision awarding him a payment of $1,528.32. In his appeal, Mr. Medina seeks reimbursement of $7,671.68, the balance of his $9,200.00 claim for damages. After filing this appeal, Mr. Medina made a request for so-called "*quantum meruit*" damages, relating to financial strain caused by Army payment delays, diminution in property value, and his personal time spent in trying to collect reparations from the government.

The parties elected to proceed without an evidentiary hearing, via Board Rule 11, with each side relying upon the Rule 4 file and its supplements and submitting opening and reply briefs in accordance with an agreed-upon schedule. For the reasons set forth below, we conclude that Mr. Medina has not met his burden of demonstrating entitlement to additional damages and, accordingly, deny the appeal.

## FINDINGS OF FACT

### I. The Lease Agreement

1. On 27 March 2012, the U.S. Government entered into Lease No. DACA63-5-12-0384 with appellant for a residence located in Cypress, Texas, as part of the U.S. Army Family

Housing Program to provide leased housing for military families. The lease was for an initial one-year term that commenced on 1 April 2012. The government had the right to renew the lease from year to year or for a lesser period of time so long as notice of renewal was provided at least 30 days prior to expiration of the current term. (R4, tab 5 at 1)

2. On 3 April 2012, Mr. Medina and a government representative conducted an initial Joint Survey and Inspection of Condition of Government Leased Property. The initial survey was signed by Mr. Medina and the government's representative. (R4, tab 13)

3. On 19 February 2013, the parties renewed the lease for an additional year, from 1 April 2013 until 31 March 2014 (R4, tab 6). On 13 February 2014, the parties renewed the lease for a third year, from 1 April 2014 until 31 March 2015 (R4, tab 7). On 27 June 2014, the parties executed a supplemental lease agreement that adjusted the amount of rent (R4, tab 8).

4. The lease contains several terms pertinent to this appeal. Paragraph 14 of the lease, "DISPUTES," states the lease is subject to the Contract Disputes Act of 1978 (R4, tab 5 at 4).

5. Paragraph 13, "RESTORATION," provides that a "final joint inspection and condition report shall be conducted" upon vacating the premises, and that "the lessor may require restoration of the demised premises, when damage beyond normal wear and tear exists" (R4, tab 5 at 3). Pursuant to paragraph 13.B. of the lease, the government's obligation to pay for restoration is subject to the following exclusions:

> The Government shall not restore, either physically or by payment in lieu thereof: 1) reasonable and ordinary wear and tear, 2) damage by acts of God, 3) any alterations, damage thereto, which the Lessors installed and were reimbursed by the Government through payment therefore, or 4) the interior paint of the demised premises, when the Government has possessed the leased premises for three or more years prior to the date of termination.

(*Id.*)

6. The lease also contains an indemnification clause, as follows:

> 5. INDEMNIFICATION.
>
> A. The Lessors shall not be responsible or liable for injuries to persons or damage to property when such injuries or damage are caused by or result from the Government's use

of the premises under the terms of this agreement and are not
due to the negligence of the Lessors.

(R4, tab 5 at 3)

II. *Termination of the Lease and Final Inspection*

7. On 23 February 2015, the government sent a letter terminating the lease effective 24 April 2015 (R4, tab 12). Effectively, the lease was extended an additional 24 days and thus the total duration of the lease term was slightly longer than 3 years, from 1 April 2012 to 24 April 2015.

8. On 27 April 2015, Mr. Medina, the service member tenant, and the Corps' representative conducted an exit survey (R4, tab 13). The exit survey was recorded on the same document as the initial survey, and included columns to indicate the initial and final condition of each room's components. The survey also included a space for general comments regarding the home's condition. Both parties signed the exit survey, which stated that "[w]e, the undersigned, jointly made a survey and inspection of the condition of the property mentioned above. We agree that as of the date of survey, the condition of the property is as described herein." (*Id.* at 11)

9. During the exit survey, the Corps' representative took photos of the property which represented the condition of the property after the tenant vacated the premises (R4, tab 14).

10. On 14 May 2015, Mr. Medina submitted a request for reimbursement of $9,200.00 (R4, tab 10). Mr. Medina's request listed 31 items that allegedly needed repair, and included cost estimates for each item (R4, tab 11).

11. On 26 May 2015, the government completed its own Independent Government Estimate (IGE) for the cost of the itemized repairs for which Mr. Medina was seeking reimbursement (R4, tab 9). In a declaration, the contracting officer explained, on an item-by-item basis, his justification for providing reimbursement in the amount of $1,528.32 (gov't br., tab B).

III. *Repairs Completed by Appellant*

12. Mr. Medina made three payments to Mr. Carlos Azua, from 30 April 2015 through 8 May 2015, for "reparations and painting" in a total amount of $7,500 (app. supp. R4, tab 5 at 2-4). Mr. Medina's evidence of these payments includes two cleared checks and an invoice from the vendor (app. supp. R4, tab 4 at 2). According to Mr. Medina, there were "hundreds of holes (some baseball size holes) to all the walls in the house" (app. supp. R4, cover ltr. at 1). Mr. Medina maintains that "most of the $7,500 invoice [from

3

Mr. Azua] was for repairs and preparation for painting" (app. supp. R4, tab 3 at 1). However, the $7,500 invoice contained general descriptions of the work completed and did not assign dollar figures to any specific item (app. supp. R4, tab 4 at 2).

13. Mr. Medina also made a payment of $2,250 to B&D Granite and Tile for the fabrication and installation of granite kitchen counters, which he states, "does not include the cost of the granite" itself (app. supp. R4, tab 4 at 1). The granite counters replaced the existing Formica counters, which Mr. Medina claimed were damaged by the government's tenant during the lease (app. supp. R4, tab 7).

IV. *Contracting Officer's Final Decision*

14. Based on the exit inspection, the exit photos, and the IGE, the contracting officer determined that appellant was entitled to reimbursement of $1,528.32 (R4, tab 3 at 1).

15. On 26 June 2015, Mr. Medina wrote to the Army, rejecting the Army's offer of reimbursement in the amount of $1,528.32 and requesting additional damages of $7,671.68, for a total damage amount of $9,200.00. Mr. Medina also requested a formal contracting officer's final decision. (R4, tab 10)

16. On 11 August 2015, the real estate contracting officer (CO) issued a final decision, which determined that appellant was entitled to reimbursement of $1,528.32 for repairs to the demised premises (R4, tab 3). Specifically, the CO concluded that the government was liable only for the following items: (1) repair of five interior doors; (2) repair stairway paneling; (3) repair staircase banister; (4) repair baseboards; (5) repair hole in garage wall; and (6) prepare the home to be painted (*id.* at 2-3).

17. On 9 October 2015, Mr. Medina filed this timely appeal seeking reimbursement of $7,671.68, the balance of his $9,200.00 claim for damages (R4, tab 2).

18. While the appeal was pending, in a letter dated 29 January 2016, Mr. Medina submitted a request for additional discovery and a "Quantum Meruit Request" asking the Board to consider additional payments due to:

- Financial strained [sic] caused by the ARMY due to payment delays

- Selling of my property at lower price due to financial strain. Reduced price by $24,000

4

- Amount of time invested on my part in order to collect reparations from the ARMY

(App. supp. R4, tab 5)

19. Both parties elected to proceed without an evidentiary hearing, via Board Rule 11, with each side relying upon the Rule 4 file and its supplements and submitting briefs in accordance with an agreed-upon schedule.

## DECISION

I.      The Board Lacks Jurisdiction to Entertain Appellant's *Quantum Meruit* Claims

After filing this appeal, Mr. Medina made a request for so-called *quantum meruit* damages, relating to financial strain, diminution in property value, and his personal time spent in trying to collect reparations from the government. Because this request was not presented to the CO as a part of Mr. Medina's claim, we lack jurisdiction to entertain it.

Submission of a claim to the CO is a prerequisite to our jurisdiction. *E.g.*, *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1111-12 (Fed. Cir. 2013) (valid claim a jurisdictional prerequisite for legal action). Although Mr. Medina's claim to the CO was for damage to his house, that claim did not put the CO on notice that there would be an additional request for *quantum meruit* damages allegedly due to financial strain, diminution in value, or personal time. As we held recently, "[a]lthough we generally allow some modification of a claim amount to reflect better information as litigation progresses, this tolerance for adjustment to the amount of damages does not extend to a case...in which an entire category of damages is first presented in the final brief on the merits of the appeal." *Monica Walker*, ASBCA No. 60436, 16-1 BCA ¶ 36,452 at 177,656 (citations omitted).

A claim is "new" if it is not "based on a common or related set of operative facts." *See Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990). In this appeal, Mr. Medina's claim for *quantum meruit* damages would require us to consider a host of new facts, such as Mr. Medina's personal finances, the amount of Mr. Medina's personal time spent on restoration, and the condition of the local real estate market. None of these facts were presented to the CO as a part of Mr. Medina's claim, nor are they in the record before us. *See Unconventional Concepts, Inc.*, ASBCA No. 56065 *et al.*, 10-1 BCA ¶ 34,340 at 169,591; *see also Santa Fe Engineers, Inc. v. United States*, 818 F.2d 856, 859-60 (Fed. Cir. 1987) ("unrelated problems" to original claims on same contract not properly before the Board). Therefore, we do not possess jurisdiction to consider Mr. Medina's post-appeal request for *quantum meruit* damages.

5

II.    Mr. Medina is Not Entitled to Compensation for Interior Painting

Mr. Medina seeks $7,500 in costs associated with painting the interior of the house. In support of reimbursement of these costs, Mr. Medina contends that the contract's indemnification clause requires the government to reimburse appellant for cost of re-painting the house. (App. supp. R4, tab 7)*

Relying on the contract's indemnification clause at paragraph 5 of the lease, appellant contends that the "hundreds of nails and staples on walls and doors (tape damage) and damage to the kitchen counters are '**damage to property...caused by or result from the Government's use of the premises under the terms of this agreement and are not due to the negligence of the Lessors**'" (app. supp. R4, tab 7). In response, the government contends that its obligation to restore the premises is limited to the duties set forth in the restoration clause in paragraph 13.B., which, among other things, specifically excludes the duty to pay for interior painting if "the Government has possessed the leased premises for three or more years prior to the date of termination" (gov't br. at 2-3). We agree.

The parties do not dispute that the lease term extended for more than three years (finding 7). We find no contradiction between the indemnification and restoration clauses. When read together, the indemnification clause states broadly that the lessor is not responsible for damage caused by the government tenant, while the restoration clause more specifically states that the government only will pay to restore the property for certain enumerated types of damage. It is settled that the contract should be interpreted as a whole, to harmonize and give a reasonable meaning to all of its parts. *Supreme Foodservice GmbH*, ASBCA No. 57884 *et al.*, 16-1 BCA ¶ 36,387 at 177,393 (citing *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004)). In the event of an apparent conflict between specific and more general language, the more specific language takes precedence. *Morris Mechanical Enterprises, Inc.*, ASBCA No. 31566, 90-1 BCA ¶ 22,278 at 111,899 (citing *United Pacific Insurance Company v. United States*, 497 F.2d 1402 (Ct. Cl. 1974)).

Moreover, the indemnification clause contains an important qualification limiting damages to those reimbursable "under the terms of this agreement" (finding 6). This language cabins the duty of indemnification to the more specific obligations in the restoration clause set forth in paragraph 13.B. The painting exclusion applies only when the government has "possessed the leased premises for three or more years prior to the date of termination" (finding 5). Here, the record demonstrates that the term of the lease

---

* Appellant submitted a Rule 11 filing that included additional documents that we deem appellant's supplemental Rule 4 file.

exceeded three years (finding 7). Therefore, we conclude that Mr. Medina is not entitled to compensation for interior painting.

III.     Whether Mr. Medina is Entitled to Any Other Damages

The lease required the government to restore any damage that exceeded "ordinary wear and tear" (R4, tab 5 at 4). As with any claim against the government, the party seeking recovery must prove a causal connection between the damages alleged and the government by a preponderance of the evidence. *Mark O'Connor*, ASBCA No. 56863, 10-1 BCA ¶ 34,329 at 169,562 (citing *Servidone Construction Corp. v. United States*, 931 F.2d 860, 861 (Fed. Cir. 1991)). In addition, the party seeking recovery must bring forth evidence that damages exceed the level of ordinary wear and tear. *Monica Walker*, 16-1 BCA ¶ 36,452 at 177,660.

Mr. Medina seeks reimbursement for $9,200.00 in expenses, less the amount he received from the government of $1,528.32, for a total reimbursement of $7,671.68 (finding 17). Of the claimed amount, $7,500.00 was paid to Carlos Azua Painting for work including: (1) painting entire home interior; (2) exterior painting of entry way and back door; (3) repair staining of interior handrail; (4) repainting and repairing all doors and baseboards; and (5) repairing multiple sheetrock nail holes and staple holes (finding 12). Mr. Medina seeks a further $1,700 for replacing the Formica kitchen counters with granite countertops. Although Mr. Medina paid $2,250 to B&D Granite, he seeks reimbursement of only $1,700 of that amount for the cost of replacing the counters less the cost of the granite itself. (Finding 13)

With the exception of the painting costs, which we have determined to be not recoverable, we examine each of these items below.

A.     Interior Doors

Mr. Medina asserts that all seventeen interior doors were damaged and needed to be repaired. Relying on the exit inspection and photographs, the government agreed to reimburse Mr. Medina for the cost of only five interior doors. (R4, tabs 13, 14 at 8, 11, 13-14, 26)

Mr. Medina provided an estimate of $1,200 for repairing and painting all seventeen interior doors and frames (R4, tab 11). However, his estimate did not differentiate between the costs for repairing and painting. Moreover, Mr. Medina did not provide any evidence – photographic or otherwise – of the nature of the damage to the doors. Instead, the record evidence from the exit survey and photographs taken during the survey demonstrate that most of the interior doors were in "good" condition. Indeed, the exit survey lists the doors in only four rooms as being in "fair" rather than "good"

7

condition. (R4, tab 13 at 4, 7-8, 10) This evidence is insufficient to demonstrate that the remaining twelve interior doors were damaged in excess of reasonable wear and tear.

### B. Formica Countertops

The record evidence of the condition of the Formica countertops consists of the exit survey, photographs taken during the exit survey, and Mr. Medina's statements in his claim and subsequent correspondence (findings 8, 10). The exit survey, which Mr. Medina signed, indicates that the kitchen cabinets were in "GOOD" condition. Although the survey does not contain a specific line item for the countertops, Mr. Medina made no mention of the condition of the countertops in the "COMMENT" section for the cabinets or in the "NOTES" section at the end of the survey. (Finding 8) The few photographs of the countertops do not clearly depict damage of any kind beyond reasonable wear and tear (R4, tab 14 at 22-23). This evidence fails to demonstrate that the countertops were damaged during the lease in excess of ordinary wear and tear.

### C. Interior Wall Repairs and Painting Preparation

In *Monica Walker*, we held that reimbursement for painting was precluded by the similarly-worded restoration clause of the lease because the government tenant had possessed the property for more than three years. *See Walker*, 16-1 BCA ¶ 36,452 at 177,657. Here, the preparation of the walls prior to painting – including repairing multiple sheetrock nail holes and staple holes – is part of the cost of painting. Indeed, the work was accomplished by the same contractor, Carlos Azua Painting, and the contractor made no attempt to separately bill the preparation work from the painting work. Therefore, we conclude that Mr. Medina is not entitled to recover for the cost of preparing the walls for repainting beyond what the CO previously awarded (finding 16).

Accordingly, we hold that the CO's decision adequately compensated appellant for damages to the leased property. Appellant has failed to demonstrate that the additional costs claimed are recoverable under the contract.

## CONCLUSION

For these reasons, the appeal is denied.

Dated: 24 July 2017

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60289, Appeal of Benjamin Medina, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9