# United States Court of Appeals for the Federal Circuit

2009-1067

STATES ROOFING CORPORATION,

Appellant,

v.

Donald C. Winter, SECRETARY OF THE NAVY,

Appellee.

David W. Lannetti, Vandeventer Black LLP, of Norfolk, Virginia, argued for appellant.  With him on the brief was Neil S. Lowenstein.

Jane C. Dempsey, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee.  With her on the brief were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Mark A. Melnick, Assistant Director.

Appealed from:  Armed Services Board of Contract Appeals

Judge Carol N. Park-Conroy

# United States Court of Appeals for the Federal Circuit

2009-1067

STATES ROOFING CORPORATION,

Appellant,

v.

Donald C. Winter, SECRETARY OF THE NAVY,

Appellee.

Appeal from the Armed Services Board of Contract Appeals in No. 54854, Administrative Judge Carol N. Park-Conroy.

_____

DECIDED: December 7, 2009

_____

Before MICHEL, Chief Judge, NEWMAN and LOURIE, Circuit Judges.

Opinion for the court filed by Circuit Judge NEWMAN. Dissenting opinion filed by Circuit Judge LOURIE.

NEWMAN, Circuit Judge.

States Roofing Corporation appeals the decision of the Armed Services Board of Contract Appeals ("the Board"), denying States Roofing's claim for additional costs incurred in connection with its contract to perform roofing work at a Naval facility in

Norfolk, Virginia.[1] The claim is brought in accordance with the Contract Disputes Act of 1978, 41 U.S.C. §601 et seq., and turns on whether States Roofing reasonably interpreted certain aspects of the contract, such that the Navy's divergent interpretation is appropriately viewed as a constructive change and warrants compensation. The Board allowed the claim as applied to work in some areas of the roof, and denied the claim as to the same work in other areas of the roof. States Roofing appeals the denial, and disputes the measure of the compensation awarded for the allowed portion of the claim.

BACKGROUND

States Roofing and the Navy entered into Contract No. N62470-97-C-8319 for "Building W-143 Roof Replacement, Wall Repair & Painting," at a fixed price of $2,370,000. Building W-143 is a large structure, and in the contract the roof is divided into eleven "cells," labeled A through K. These cells include penthouses located on the main roof, and both the main roof itself and the penthouses have vertical elements called parapet walls. This appeal relates to the contract's requirements for waterproofing of the parapet walls.

Pursuant to Federal Acquisition Regulation ("FAR") 52.236-3 ("Site Investigation and Conditions Affecting the Work"), States Roofing's President, Hugh DeLauney, had inspected the roof of Building W-143 before bidding. Mr. DeLauney observed the roofing work that had previously been performed in cells A and B by a different contractor, RayCo Roofing. RayCo had used waterproofing paint on the parapet walls in these cells; States Roofing formulated its bid accordingly. The Board found that the

---

[1] Appeal of States Roofing Corp., ASBCA No. 54854, 08-02 BCA ¶33,912 ("Board Opinion").

use of paint to waterproof parapet walls is not uncommon, and that States Roofing had used this method of waterproofing in other government contracts. The Board found that "[a]t the time of the bid, SRC intended to paint the parapet walls after cleaning them; it did not intend to apply any type of wall flashing to them." Board Opinion at 9.

After States Roofing had been awarded the contract and had begun work on the project, the Navy objected to the use of waterproofing paint on the parapet walls. Lt. Darren R. Hale, the Assistant Resident Officer in Charge of Construction, disagreed with States Roofing's understanding of the contract, and required use of three-ply felt flashing material to waterproof the parapet walls. It was eventually agreed that States Roofing would apply a one-ply waterproofing flashing material having the brand name "DynaClad," but only because the commercially available three-ply flashing material was found not suitable for this application and DynaClad was deemed a comparable substitute. States Roofing complied with the Navy's instructions and applied the DynaClad to the parapet walls, and requested an equitable adjustment for the additional cost of using DynaClad flashing material instead of paint on the parapet walls. The Navy's contracting officer held that the use of DynaClad was a no-cost change, reasoning that the contract required three-ply flashing material, not paint.

The roofing work continued to completion. States Roofing's accountant performed an audit, including all adjustments and settled claims, and concluded that the company had incurred costs totaling $3,329,317.51 in performing the contract, excluding profit. The government's corresponding audit concluded that total costs of $3,336,636 were incurred, excluding profit. States Roofing was paid a total of $2,934,346.07, placing it in an overall loss position.

On appeal to the Board, States Roofing argued that it had reasonably interpreted the contract as permitting use of waterproofing paint for the parapet walls, and that if the contract were unclear or ambiguous, reasonable doubt should be resolved in favor of the contractor under the rules of interpretation of federal procurement contracts. The Board found that for the parapet walls of the penthouses of roof cells A and B, only waterproofing paint was required, but that for parapet walls in cells C through J, three-ply flashing material was required. The Board found that States Roofing erroneously assumed that the acceptability of paint for cells A and B also applied to cells C through J, and that States Roofing failed to take account of certain detail appearing on drawing A38, which was one of the 48 sheets of drawings included with the contract. The Board found that there was "no specification for the parapet wall waterproofing membrane," for the Navy stated that it had "inadvertently" omitted this specification. Board Opinion at 7. However, the Board held that drawing A38 provided sufficient indication that felt flashing material was required on the parapet walls, to render States Roofing's interpretation "not within the zone of reasonableness." Id. at 20.

The Board also stated, as an alternative ground for denying relief for the roof cells other than cells A and B, that "[a]t a minimum, there was a patent ambiguity in the specifications and drawings arising out of the references to 'coats,' 'layers' and 'plies' about which [States Roofing] was obligated to inquire." Id.

DISCUSSION

Contract interpretation under the Contract Disputes Act is a question of law, requiring plenary determination on appeal to this court, with "no deference owing to the interpretation adopted by either the agency or the Board." Lockheed Martin IR Imaging

Systems, Inc. v. West, 108 F.3d 319, 322 (Fed. Cir. 1997); see 41 U.S.C. §609(b) ("the decision of the agency board on any question of law shall not be final or conclusive"); Textron Def. Systems v. Widnall, 143 F.3d 1465, 1468 (Fed. Cir. 1998) ("Contract interpretation is a question of law over which we exercise complete and independent review."). In addition, "[c]onstruction of the language of the contract to determine whether there is an ambiguity is a question of law which we review without deference." Gardiner, Kamya & Assocs., P.C. v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006). "[W]hether ambiguities are latent or patent and whether the contractor's interpretation thereof is reasonable are also questions of law subject to de novo review." Interwest Constr. v. Brown, 29 F.3d 611, 614 (Fed. Cir. 1994). However, the Board's factual findings "shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. §609(b).

I

A

States Roofing argues that its interpretation of the contract as permitting use of waterproofing paint on the parapet walls of all roof cells was reasonable in light of the contract documents and the circumstances surrounding its bid. States Roofing states that when a contractor relies in its bid on a reasonable interpretation of the contract documents and specifications, any change based on a different interpretation by the government is not chargeable to the contractor, as explained in WPC Enterprises, Inc. v. United States, 323 F.2d 874, 877–78 (Ct. Cl. 1963) (citations omitted):

> [I]f some substantive provision of a government-drawn contract is fairly susceptible of a certain construction and the contractor actually and reasonably so construes it, in the course of bidding or performance, that is the interpretation which will be adopted, unless the parties' intention is otherwise affirmatively revealed. This rule is fair both to the drafters and to those who are required to accept or reject the contract as proffered, without haggling. . . . If the [government] chafes under the continued application of this check, it can obtain a looser rein by a more meticulous writing of its contracts and especially of the specifications.

This rule of contra proferentem continues to apply, as illustrated in Lockheed Martin IR Imaging Systems, 108 F.3d at 322, where this court declined to impose a contract interpretation sought by the Army but to which the contractor never intended to agree. States Roofing points out that this principle has particular force where, as here, the Navy "inadvertently" omitted a specification that could have avoided misunderstanding. See Appeal of City Elec., Inc., ASBCA No. 24565, 82-2 BCA §16,057 (contractor's interpretation was reasonable where it was "conceded by the Government that neither the contract specifications nor the contract drawings provide any details for constructing" the relevant feature).

In determining whether States Roofing's interpretation was reasonable, as to whether paint or flashing material was required for the parapet walls, we need not conclude that it was the only possible reasonable interpretation, or even the best one. See United Pac. Ins. Co. v. United States, 497 F.2d 1402, 1407 (Ct. Cl. 1974) ("[I]t is well established that if a drawing or specification is ambiguous and the contractor follows an interpretation that is reasonable, this interpretation will prevail over one advanced by the Government, even though the Government's interpretation may be a more reasonable one, since the Government drafted the contract."); City Elec., ASBCA No. 24565, 82-2 BCA §16,057 ("A contractor's reasonable interpretation need not be

the best interpretation. It need only be within the zone of reasonableness."). Thus States Roofing states that the Board erred in ruling that States Roofing's understanding of the contract's requirement for waterproofing the parapet walls was "not within the zone of reasonableness."

States Roofing argues that it was reasonable to interpret the provision for waterproofing the parapet walls in cells C through J in the same way as for cells A and B, for which the Board agrees that only paint was required. States Roofing argues that contract drawing A38, on which the Navy relies, does not clearly indicate the use of flashing material rather than paint for this area, and does not fill the gap left by the Navy's admitted failure to provide a specification for this material, as would have clarified this aspect of the proposal. States Roofing states that the reasonableness of its understanding is reinforced by Mr. DeLauney's pre-bid site inspection which showed that paint had previously been used to waterproof the parapet walls in roof cells A and B, and in light of States Roofing's acknowledged use of waterproofing paint for the same kind of roofing structures in other government contracts, and which practice the Board found was "not uncommon in the industry." Board Opinion at 10.

As summarized by the Board, States Roofing "read the contract documents as requiring it to paint the parapet walls, pointing specifically to Demolition Note 23 on Sheet A2, contract specifications from Section 09900, New Work Notes 28 and 61 on sheet A2, and General Work Notes 12 and 18 on sheet A3 (R4, tab 25)." Id. As found by the Board, Demolition Note 23 on drawing A2 required removal of existing flashing or other surfacing from the "inside face and top of parapet wall," and stated "repair wall as required." Id. at 7. Contract Specification 09900, which related to "Paints and

Coatings," specified that it applied to "existing coated surfaces made bare by cleaning operations," and that "three coats of paint (primer, intermediate, and topcoat)" were to be applied. Id. New Work Note 28 on drawing A2 required repainting of existing painted concrete and brick, while New Work Note 61 provided: "Back side of parapet wall – paint down to surface applied counter flashing." Id. at 8. The Board found that the "'back side' of the parapet wall means its interior side." Id. The Board found that General Work Notes 12 and 18 on drawing A3 "described work similar to New Work Notes 28 and 29" on drawing A2, and that "General Work Note 18 explicitly refers to the parapets." Id. States Roofing also read General Note 2 on drawing A8, which referred to these notes on drawings A2 and A3 and designated the work as "typical," with the word "typical" indicating that the combined details of these drawings and notes would not be repeated in the other drawings. Id. at 13.

States Roofing states that these provisions of the contract and drawings, read together, support its position that it was reasonable to read the contract as requiring the use of paint on the parapet walls. However, the Board found that States Roofing's "interpretation does not fully consider the other drawings, in particular Sheet A38." Id. at 19. Sheet A38 is titled "Typical Flashing Detail @ Roof Drains & Parapet Walls" and contains New Work Note 2, which calls for a "Waterproofing Membrane (3 Layers)" to be applied to the parapet walls in cells C through J. States Roofing argued that, in light of the various provisions specifying the use of paint in connection with parapet walls, it reasonably understood the reference to "3 Layers" as requiring three layers of paint. Id. at 13. The Board held that this work note, combined with the drawing itself, adequately specified that three-ply flashing material was intended as the "waterproofing membrane

3-Layers," and gave no weight to States Roofing's assorted evidence of the reasonableness of its interpretation.

States Roofing asserts that the Board unlawfully resolved against the contractor, what is at most unclear, citing the Navy's admitted failure to include the specification that would have avoided uncertainty. States Roofing argues that, even apart from the missing specification, if the Navy had intended to require three-ply flashing material, rather than paint, to be applied to the parapet walls, it could easily have used clearer words to state this intention on drawing A38, as indeed it had done elsewhere in the contract. For instance, other Work Notes on drawings A37 and A38, referring to areas other than the parapet walls, call for "Waterproofing Membranes (3-Ply)" and "Multiple-Ply Membrane Base Flashing." Both States Roofing and the Navy understood these Work Notes as requiring plies of flashing material. States Roofing refers to the canon of statutory interpretation whereby different terms are presumed to have different meanings, see, e.g., United States v. Maria, 186 F.3d 65, 71 (2d Cir. 1999) ("As a general matter, the use of different words within the same statutory context strongly suggests that different meanings were intended."), and argues that the same presumption reasonably applies in contract interpretation. Thus States Roofing argues that it was reasonable for it to understand "3 Layers" on drawing A38 to refer to three layers of paint, as distinguished from the "multiple-ply flashing material" that was expressly specified elsewhere on the same drawing and throughout the contract for other areas of the roof.

The Board offered no explanation for the contract's use of these different terms if the same three-ply flashing material were intended and required to be used to

waterproof the parapet walls, and acknowledged a potential ambiguity "arising out of the references to 'coats,' 'layers' and 'plies.'" Board Opinion at 20. Nor has the Navy, in its brief, provided any explanation for this inconsistent terminology. The Navy merely argues that it used "layers" and "plies" "interchangeably," and thus that the presumption that different words have different meanings holds no sway. The Navy also argues that the contract elsewhere uses "coats" or "coatings" when referring to paint, and offers the theory that "layers" is more like "plies" than it is like "coats."

The Navy argues that the drawing of sheet A38, which shows three thin, narrowly spaced, parallel black lines along the parapet walls, shows that a three-ply flashing material, rather than three layers of paint, was specified. The Board did not find the drawing to be as clear as the Navy proposes. The Board found that "Sheet A38 does not specify any required thickness for the waterproofing layers," id. at 8, and rejected the testimony by the Navy's roofing witness, Mark deOgburn, who stated that the three narrowly spaced lines show layers of felt material that "were supposed to be 1/2-inch thick," id. at 19. This Board finding is consistent with States Roofing's position that this detail was inadequate to specify that flashing material was required for the parapet walls.

The Navy also argues that drawing A38 shows the use of fasteners, and that fasteners are consistent with the use of flashing material rather than paint. States Roofing responds that the placement of these fasteners shows that their purpose is to attach sheet metal coping to the sides of the parapet wall and to attach the base flashing used for the roof to the bottom of the parapet walls. Drawing A38 shows fasteners only where other roofing features overlap with the waterproofing membrane;

no fasteners are shown along the portion of the parapet wall covered only by the three lines that the Navy says is three-ply flashing material, although not so designated. We agree that this argument about fasteners does not support the government's position that the three lines in the A38 drawing are consistent only with three-ply flashing material.

The Navy also argues that States Roofing's interpretation would render drawing A38 superfluous. In response, States Roofing points to several aspects of drawing A38 that relate to other contract requirements, unrelated to the waterproofing of the parapet walls. States Roofing is correct that these aspects of drawing A38 negate the suggestion that States Roofing's interpretation would render this drawing superfluous.

The Board's opinion contains other indications of the Board's concern with the contract, for the Board observed that "[t]he individual who drafted the contract drawings did not testify at the hearing." The Navy witnesses were the architect who had worked on the project, David Greenfield, and a subject matter expert in roofing, Mr. deOgburn. The Board observed that these two witnesses did not agree, for Mr. Greenfield read the contract as "indicating that all of the penthouse parapet walls were to be cleaned and painted," Board Opinion at 18 (emphasis by Board), while Mr. deOgburn opined that the parapet walls of cells C though J were to be covered with three-ply flashing material. The Board observed that the Navy "disavow[ed]" Mr. Greenfield's testimony and favored Mr. deOgburn's testimony. Id. On this appeal the Navy presses the contract interpretation of a roofer who apparently had no connection to the project, over that of the architect the Navy had hired to work on the project. The Board found that Mr. Greenfield had not only reviewed and revised the contract drawings and prepared the

government's estimate, but actually added detail to drawing A38 in an attempt to clarify it. The discord between the Navy's witnesses does not strengthen the Navy's position that drawing A38 was clear and States Roofing's interpretation unreasonable.

We conclude that States Roofing's interpretation was within the zone of reasonableness, in view of all of the evidence and circumstances including the prior use of waterproofing paint on parapet walls of the same roof, the Board's agreement that waterproofing paint was required for some parapet walls, the consistent use of "ply" and other more precise terms wherever flashing material was specified, the Navy's admitted omission of the relevant specification, the conflicting expert testimony, and with due attention to the rule of contra proferentem. The Board's contrary ruling is reversed.

B

The Board made the alternative holding that any contract ambiguity was "patent," arising "out of the references to 'coats,' 'layers' and 'plies' about which [States Roofing] was obligated to inquire." Board Opinion at 20.

A "patent ambiguity" is one that is "obvious, gross, glaring, so that plaintiff contractor had a duty to inquire about it at the start." H&M Moving, Inc. v. United States, 499 F.2d 660, 671 (Ct. Cl. 1974). As explained in Grumman Data Systems Corp. v. Dalton, "a patent ambiguity does not exist where the ambiguity is neither glaring nor substantial nor patently obvious." 88 F.3d 990, 997 (Fed. Cir. 1996) (internal quotation marks omitted). See generally WPC Enters., 323 F.2d at 877 ("Although the potential contractor may have some duty to inquire about a major patent discrepancy, or obvious omission, or a drastic conflict in provisions, he is not normally required (absent

a clear warning in the contract) to seek clarification of any and all ambiguities, doubts, or possible differences in interpretation.").

States Roofing contends that the contract did not include a glaring conflict or omission. States Roofing states that it reasonably understood the different words "layers" and "plies" to have different meanings, citing its knowledge of the past use of paint as the waterproofing material for these parapet walls, and the fact that plies of flashing material were plainly specified in the contract where flashing was intended for use elsewhere on the roof. The Navy does not dispute that States Roofing genuinely understood the contract to require paint for waterproofing of the parapet walls in all roof cells, and that States Roofing relied on this understanding in its bid.

We agree with States Roofing that any ambiguity in the contract was latent, rather than patent. As precedent explains, there must be a glaring conflict or obvious error in order to impose the consequences of misunderstanding on the contractor. See HPI/GSA 3C, LLC v. Perry, 364 F.3d 1327, 1334 (Fed. Cir. 2004) ("Where an ambiguity is not sufficiently glaring to trigger the patent ambiguity exception, it is deemed latent and the general rule of contra proferentem applies."); Blount Bros. Const. Co. v. United States, 346 F.2d 962, 973 (Ct. Cl. 1965) ("[Contractors] are not expected to exercise clairvoyance in spotting hidden ambiguities in the bid documents, and they are protected if they innocently construe in their own favor an ambiguity equally susceptible to another construction, for . . . the basic precept is that ambiguities in contracts drawn by the Government are construed against the drafter."). We conclude that the waterproofing requirement for the parapet walls, as set forth in the contract, does not meet the criteria of a patent ambiguity.

C

We conclude that the requirement that flashing material be used on all of the parapet walls instead of waterproofing paint was a constructive change, for which compensation is appropriate. States Roofing is entitled to recover the additional costs incurred for the use of DynaClad as compared with paint on the roof parapet walls, including a reasonable profit on this work. We reverse that portion of the Board decision that denied this claim for the roof cells other than cells A and B, and remand for determination of quantum.

II

The Board granted an equitable adjustment to States Roofing for the additional costs incurred in connection with using DynaClad waterproofing material rather than paint for the parapet walls in roof cells A and B. The Board awarded the difference between States Roofing's actual costs in using the DynaClad for these walls, and the estimated reasonable cost of painting these features as included in States Roofing's bid. This cost estimate for painting work incorporated a profit component, and States Roofing takes issue with the subtraction of this profit component from the adjustment for roof cells A and B. States Roofing argues that deprivation of this profit component is unfair because it is in a loss position on the contract as a whole, citing several board decisions that considered the contractor's overall loss position in evaluating equitable adjustments. See Appeal of CRF, ASBCA No. 17340, 76-1 BCA ¶11,857 (quoting Appeal of G.M. Co. Mfg. Inc., ASBCA No. 2883, 57-2 BCA ¶1505) ("On a losing contract the price adjustment should not add to the loss the contractor would have experienced if there had been no change order."); Appeal of Banta Co., GPOBCA No. 3-91, 1993 WL

526843 at n.38 ("Indeed, the ASBCA has held that it is improper for the Government to add profit to a deductive change because, on a losing contract, the price adjustment should not add to the loss the contractor would have experienced if there had been no change order.").

As the Navy points out, the decisions on which States Roofing relies arose in the context of "deductive" changes to the contract, in which the government required that the contractor perform less, rather than more, than the contract provided. In such circumstance, it may be appropriate to compensate for profit the contractor would have received as the contract was initially mutually agreed. Here, in contrast, the constructive change for cells A and B resulted in an increase in the total contract payment; that is, it was not a deductive change.

The Navy advises that States Roofing received a profit component on the DynaClad installation, in a payment formula whereby States Roofing's bid price for painting parapet walls in cells A and B, which included profit on that work, was replaced with the actual cost plus profit for the use of DynaClad. We agree that this was correct and equitable, and affirm the Board's methodology for the quantum adjustment for cells A and B.

CONCLUSION

States Roofing's interpretation of the contract as requiring waterproofing paint on the parapet walls was within the zone of reasonableness, and States Roofing is entitled to compensation for the additional costs incurred due to use of DynaClad instead of paint. We remand for determination of quantum. We affirm the Board's methodology as described for roof cells A and B.

Costs to States Roofing.

### REVERSED AND REMANDED; METHODOLOGY AFFIRMED

# United States Court of Appeals for the Federal Circuit

2009-1067

STATES ROOFING CORPORATION,

Appellant,

v.

Donald C. Winter,
SECRETARY OF THE NAVY,

Appellee.

Appeal from the Armed Services Board of Contract Appeals in No. 54854, Administrative Judge Carol N. Park-Conroy.

LOURIE, Circuit Judge, dissenting.

I agree with the majority that the contract in question is ambiguous, but I disagree that the ambiguity is latent. I find the contract to be patently ambiguous and thus States Roofing Corporation ("States Roofing") should have inquired about the patent ambiguity. Because States Roofing failed to do so, it did not act as a reasonable contractor, and its interpretation of the contract cannot govern. Therefore, I respectfully dissent.

This dispute centers on the proper interpretation of the term "waterproofing membrane (3 layers)" for roof cells C through J. This term is used in a new work note of drawing A38, which is entitled "Typical Flashing Detail @ Roof Drains & Parapet Walls." The essence of the parties' disagreement is whether the contract required the three-layer waterproofing membrane to be made of flashing material, as the government argues, or whether waterproof paint was sufficient, as States Roofing contends. I do

not pretend to know the correct answer, but the ambiguity of the drawings is abundantly clear.

"A patent ambiguity is one that is glaring, substantial, or patently obvious." Comtrol, Inc. v. United States, 294 F.3d 1357, 1365 (Fed. Cir. 2002) (citation omitted). "A patent ambiguity is present when the contract contains facially inconsistent provisions that would place a reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties." Stratos Mobile Networks, USA, LLC v. United States, 213 F.3d 1375, 1381 (Fed. Cir. 2000). If a contract contains a patent ambiguity, "the rules of government contracting place the obligation of inquiry upon the contractor." Lockheed Martin IR Imaging Sys., Inc. v. West, 108 F.3d 319, 322 (Fed. Cir. 1997). If the contractor fails to inquire about a patent ambiguity, this failure will preclude acceptance of its interpretation of the contract. Stratos Mobile, 213 F.3d at 1381.

In this case, the government admits to having mistakenly omitted the specification for the three-layer waterproofing membrane. Without that specification, the word "layer" is unexplained in the contract, in contrast to "ply," which was used in drawing A38 for the base flashing, or "coat," which is used elsewhere in the contract for applications of paint. Despite States Roofing's insistence that the new work notes on sheet A2, which describe painting the parapet walls, apply to the roof cells in question, those work notes are referenced in drawing A8, not drawing A38. Drawing A8 has a key in the bottom right corner that shades Roof Cells A and B only, evidencing that A8 does not apply to Roof Cells C-J. In contrast, drawings A4-A7 shade Roof Cells C-J and reference drawing A38. "We must interpret [a contract] as a whole and 'in a

manner which gives reasonable meaning to all its parts and avoids conflict or surplusage of its provisions.'" United Int'l Investigative Serv. v. United States, 109 F.3d 734, 737 (Fed. Cir. 1997) (citing Granite Const. Co. v. United States, 962 F.2d 998, 1003 (Fed. Cir. 1992)). We must, then, look to drawing A38 and its new work notes to determine the meaning of "waterproofing membrane (3 layers)" for Roof Cells C-J.

In drawing A38, the three-layer waterproofing membrane is depicted by three lines that run along the vertical parapet wall and continue over the top of the wall. The bottom of the three-layer waterproofing membrane overlaps with "multiple-ply membrane base flashing" that runs along the surface of the roof and reaches part-way up the parapet wall. At the intersection of the three-layer waterproofing membrane and the multiple-ply membrane base flashing are "fasteners," indicated by dark shading between the membranes, that appear to lock the two membranes to each other. Drawing A38 also depicts "sheet metal coping" that caps the tops of the parapets. Fasteners also appear to connect the sheet metal coping with the three-layer waterproofing membrane. Drawing A38, therefore, seems to indicate that the three-layer waterproofing membrane has some substance to it, rather than being just paint. If the waterproofing membrane were just waterproofing paint, the fasteners between the base flashing and the waterproofing membrane would be superfluous, since one could simply paint three layers of waterproofing paint on top of the base flashing to obtain the same overlap portrayed in drawing A38 without any fasteners. However, drawing A38 clearly uses the undefined term "layer" to describe the waterproofing membrane, in contrast to "ply," which is used for the base flashing, which would indicate that the waterproofing membrane is not made up of flashing material.

Thus, the contract contains a glaring ambiguity regarding the meaning of "layers." A reasonable contractor would have inquired about the meaning of the term. States Roofing failed to do so. Because of this failure, we are precluded from adopting States Roofing's interpretation of the contract. Thus, States Roofing was required to abide by the Navy's interpretation and use three-ply flashing material as the waterproofing membrane on the parapet walls of Roof Cells C-J.

Because I would hold the contract to be patently ambiguous, I would not reach the question whether States Roofing's interpretation of the contract was reasonable.

For the foregoing reasons, I respectfully dissent.