ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| L&M Technologies, Inc. | ) | ASBCA No. 61397 |
| | ) | |
| Under Contract No. NNJ08JA01C | ) | |

APPEARANCE FOR THE APPELLANT:      Ms. Antonette Montoya
                                   Chief Executive Officer

APPEARANCES FOR THE GOVERNMENT:    Scott W. Barber, Esq.
                                     NASA Chief Trial Attorney
                                   Wendy L. Bateman, Esq.
                                     Trial Attorney
                                     NASA Johnson Space Center
                                     Houston, TX
                                   Brian M. Stanford, Esq.
                                   Lisette S. Washington, Esq.
                                     Trial Attorneys
                                     NASA Headquarters
                                     Washington, DC

## OPINION BY ADMINISTRATIVE JUDGE CLARKE

This appeal arises out of a contract for logistics operations services for the NASA Johnson Space Center (JSC), Houston, Texas. The parties dispute the proper interpretation of a clause dealing with unallowable costs. L&M Technologies, Inc. (L&M), claims $683,739.31 to account for Defense Contract Management Agency's (DCMA's) 2009 final indirect rates. The parties decided to submit this case on the record pursuant to Board Rule 11. We decide entitlement only. We have jurisdiction pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. We sustain the appeal.

## FINDINGS OF FACT

1. On December 21, 2007, NASA awarded L&M Contract No. NNJ08JA01C for logistics operations services for JSC in Houston, Texas, including those facilities at JSC, Ellington Field, and the Sonny Carter Training Facility (R4, tab 0 at 1, 5). The contract included a 54-day, phase-in period and up to 10 contract years (CYs)[1] of performance with a combination of cost-plus-fixed-fee, cost-plus-award-fee, and award

---

[1] To avoid confusion, "CY" stands for "contract year" that runs from March to February, not calendar year.

term options (*id.* at 6). The period of performance for each CY was from March to February[2] with CY 1 being from March 1, 2008 to February 28, 2009 (*id.* at 6-8). The contract year at issue in this appeal, CY 2, accordingly, is March 1, 2009 through February 28, 2010.

*Indirect Rates and Invoices*

2. By letter dated April 28, 2008, the Defense Contract Audit Agency (DCAA) approved provisional billing rates for L&M's fiscal year ending December 31, 2008[3] as:

| Description | Indirect Rates |
|---|---|
| Total Fringe[4] | 39.24% |
| Overhead | 9.56% |
| G&A | 5.29% |

(R4, tab 6)

3. On May 4, 2009, L&M submitted its 2009 estimated provisional rates to DCAA for approval (R4, tab 10 at 2; app. supp. R4, tab 19 at 2). L&M's 2009 estimated provisional rates were: Total Fringe at 41.95%, Overhead at 13.24%, and G&A at 5.32% (app. supp. R4, tab 15 at 1).

4. By letter dated May 13, 2009, to contracting officer (CO) Rubio, L&M documented a telephone conversation between CO Rubio and Mr. Silva, L&M controller, held on the same day, concerning L&M's indirect rate adjustments for the periods "CY-2008 (03/01/08-12/31/08) and CY-2009 (01/01/09-04/24/09)"[5] (app. supp. R4, tab 15). Mr. Silva wrote, "After addressing your concerns, I was delighted to hear that you have given us approval to process the rate adjustment invoices" (*id.* at 1). L&M billed 2008 provisional rates for both periods: 39.24% Total Fringe, 9.56% Overhead, and 5.29% G&A. The adjustment invoice for the first period was for the increase in 2008 actual rates.[6] The adjustment invoice for the second period was for the increase in 2009 estimated provisional rates of 41.95% Total Fringe, 13.24% Overhead, and 5.32% G&A. (*Id.*) Mr. Silva also wrote, "Effective April 25, 2009, the CY-2009 estimated provisional rates (Fringe 41.95%, O/H 13.24%, and G&A 5.32%) are incorporated into the invoice and also into the 533M reporting and will remain in effect until December 31, 2009" (*id.* at 2).

---

[2] There seems to be an error in CY 2 that indicates it ends September 30, 2009 (R4, tab 0 at 8).

[3] DCAA approved rates for a fiscal year which is different than this contract's CY.

[4] Total fringe is the sum of "statutory fringe" and "full fringe" (R4, tab 6).

[5] In this quote from the letter it appears that L&M's use of "CY-2009" refers to calendar year because January and February 2009 are in CY 1.

[6] Although the letter refers to "CY-2008 actual rates" we doubt this is accurate because DCAA's approval of actual rates, as opposed to provisional rates, typically is not done in the same year.

5. On May 15, 2009, L&M submitted Invoice No. 67 in the amount of $56,820.68 which was the difference between the 2008 provisional rates billed and L&M's 2009 estimated provisional billing rates of 41.95% Total Fringe, 13.24% Overhead and 5.32% G&A for the period of January 1, 2009 to April 24, 2009[7] (R4, tab 7R at 1-2). On May 28, 2009, CO Rubio rejected Invoice No. 67 because the 2009 provisional rates had not been approved by DCAA (R4, tab 7S at 1).

6. In a series of emails to L&M on June 1-2, 2009, DCAA confirmed that L&M could bill at its 2009 estimated provisional rates before they were formally approved by DCAA (R4, tab 10 at 2-3). On June 3, 2009, L&M sent DCAA's emails to CO Rubio and informed him that DCAA had agreed that L&M could submit invoices using L&M's 2009 estimated provisional rates (*id.* at 1).

7. By letter dated July 15, 2009,[8] DCAA approved L&M's provisional billing rates for the fiscal year ending December 31, 2009 as:

| Description | Indirect Rates |
| --- | --- |
| Total Fringe | 41.95% |
| Overhead | 13.24% |
| G&A | 5.32% |

(R4, tab 1B at 1)

*NASA Form 533*

8. L&M submitted monthly NASA Contractor Financial Management reports on NASA Form (NF) 533. The forms were addressed to "NASA JSC ATTN: Contracting Officer." The NF 533s for calendar year 2009 document that for each month except May 2009, L&M billed at the 2008 provisional rates of 39.24% Total Fringe, 9.56% Overhead and 5.29% G&A. (R4, tab 7Q Jan-Dec 09) For May 2009 L&M billed at the 2009 estimated provisional rates of 41.95% Total Fringe, 13.24% Overhead, and 5.29%[9] G&A (R4, tab 7Q May 09). The May 2009 NF 533 corresponds with Invoice No. 67 that CO Rubio rejected because DCAA had not approved L&M's provisional rates (R4, tab 7S at 1).[10]

---

[7] L&M had billed at the DCAA 2008 provisional rates of 39.24% Fringe, 9.56% Overhead and 5.29% G&A (R4, tab 6).

[8] DCAA's rate decision was based on L&M's May 4, 2009 indirect rate forecast (R4, tab 1B at 1).

[9] This should have been 5.32% G&A.

[10] It is unclear from the record which rate was actually paid since Invoice No. 67 was rejected (R4, 7S at 1), but the NF 533 lists the 41.95%, 13.24% and 5.29% (R4, tab 7Q May 09).

3

*The May 2010 Correspondence*

9. By email dated May 6, 2010, to L&M "Subject: Logistics Contract: Actuals – Need response," CO Rubio requested the following:

> (1) Is L&M reporting their provisional billing rates (as approved by DCAA around July/August '09) in their 533s?
> (2) Is L&M reporting their provisional billing rates (as approved by DCAA around July/August '09) in their monthly invoices?
> (3) If the answer is "No" to #2 above when do you plan to submit those invoices and approximately how much in costs will it be?
>
> As I have mentioned to L&M corporate folks since a year ago, the provisional billing rate increase(s) are L&M's actuals and will be measured against the cost gate. Unless, L&M chooses to not ever bill those rates against the contract.
>
> Please let me know of the above as soon as you can.

(App. supp. R4, tab 25 at 6)

10. L&M responded by letter on May 10, 2010:

> Subject: 05/06/10 email Logistics Contract: Actuals - Need response
>
> Dear Kelly,[11]
>
> This is L&M's response to the subject matter email. Based on NASA's direction, L&M is not utilizing 2009 provisional billing rates in either the 533's or invoices. The difference between 2009 costs at '09 vs. '08 provisional billing rates is approximately $176,203. L&M is willing to submit an invoice to NASA after a formal request outlining your desired timeframe and method of 533 handling is received.
>
> L&M attempted to invoice and report on our 533's using 2009 provisional rates immediately after they were

---

[11] CO Rubio's first name.

4

submitted to DCAA on May 4, 2009. It was discussed in April, and our May 15, 2009 invoice was based on 2009 provisional rates. This invoice was rejected on May 29th. In a 533 meeting on June 18th and in a subsequent meeting with you in Houston on June 30th, we were directed to remove 2009 rate true-ups from our 533. Since then we understood from a number of conversations that the rate adjustments would be dealt with after the REA was resolved. We are happy to finally address these provisional rates and costs.

Sincerely,
Antonette Montoya
CFO

(App. supp. R4, tab 25 at 7)

11. CO Rubio responded by email on the same day, May 10, 2010:

Subject: RE: L&M Technologies response....RE: Logistics Contract: Actuals - Need response

Antonette —

I am reviewing your letter and have to say there is a miscommunication I'd like for you to clear up for all of us.

L&M 533's are reporting the following rates (which are not the original contract rates) as well as L&M's invoices to date:

- Fringe at 39.45%
- Overhead at 9.56%
- G&A at 5[.]29%

Are these L&M's CY 08 provisional rates? **Please confirm**.

L&M's 2009 provisional rates were not even approved by DCAA at the time of May 2009 (Invoice 67 dated 5/14/09 and 70 dated 5/18/09) yet L&M attempted to bill them and include them in the REA and I took exception to that.

5

So do you concur that you are reporting on the 533 and
invoicing for provisional rates ('08) just not '09 rates?
What are L&M's '09 provisional rates?

(App. supp. R4, tab 25 at 8)  The other emails in this tab do not clearly seem to be L&M's response to CO Rubio's question about 2008 rates (*id.* at 9-11).  On May 12, 2010, CO Rubio sent L&M a draft copy of Modification No. 49 for REA definitization (*id.* at 9). However, none of NASA's emails challenge the statements in L&M's May 10, 2010 letter in particular, that the CO had directed L&M not to submit the provisional 2009 rates in the invoices/NF 533's (*id.* at 9-11).

*Invoice No. 200*

12.  On September 14, 2010, L&M submitted Invoice No. 200 a "contract-to-date adjusting invoice for the period of 03/01/2008 – 08/27/2010" in the amount of $433,839.01 (R4, tabs 7T, 7U at 2).  The invoice amount was comprised of $155,750.44 for 2008, $176,396.17 for 2009 and $101,692.40 for 2010.  The cover letter explained that L&M had previously billed for these years at the 2008 indirect rates of 39.24% Total Fringe, 9.56% Overhead and 5.29% G&A.  (R4, tab 7T)  The increase was the result of L&M asking for 2009 DCAA approved provisional rates of 41.95% Total Fringe, 13.24% Overhead, and 5.32% G&A.[12]  Invoice No. 200 was approved for payment by CO Rubio[13] on September 30, 2010.  (R4, tab 7U at 2)

*Clause B.8*

13.  On February 1, 2012, L&M met with the CO and requested that NASA establish an indirect rate ceiling on the contract (R4, tab 1C at 1).  In a May 11, 2012 meeting with NASA, L&M explained that DCAA's rates were higher than L&M's due to a disagreement over the allocation base (*id.*).[14]

14.  By email dated January 25, 2013, to L&M, NASA rejected L&M's request for a rate ceiling and submitted a draft of Clause B.8 allowing L&M to bill NASA at "rates less than what DCAA has established as acceptable" (R4, tab 9Y).

---

[12] These are the DCAA-approved provisional rates for 2009 and the rates listed in Clause B.8 (findings 10, 15).

[13] Although CO Rubio's name is not printed on the voucher, we compared her distinctive signature with that on her declaration and they are the same.

[14] For reasons that we need not go into here involving "cost gates," it was to L&M's benefit to keep its rates under certain amounts.

6

15. On or before March 21, 2013, the parties agreed to Clause B.8 which reads as follows:

### B.8    Agreement on Unallowable Costs

Without otherwise affecting the applicability of the cost principles set forth in Part 31 of the Federal Acquisition Regulation, which are a part of this contract pursuant to the clause entitled: "Allowable Cost and Payment," the following agreements are made as to the reporting and billing terms for this contract:

Provisional and Actual Billing Rates

For contract years 1 through 5 that the Contractor invoiced at indirect rates below the provisional billing rates approved by the DCAA, the Contractor shall assume all costs in excess of the indirect rates in the table below. Any costs incurred above these amounts shall be unallowable costs and shall not be billed to the Government under this or any other Government contract.

| Contract Year | Full Fringe (FF) | Overhead (OH) | G&A |
|---|---|---|---|
| Contract Year 1 | 39.24% | 9.56% | 5.29% |
| Contract Year 2 | 41.95% | 13.24% | 5.32% |
| Contract Year 3 | 45.56% | 13.24% | 6.50% |
| Contract Year 4 | 45.56% | 13.24% | 6.50% |
| Contract Year 5 | 45.56% | 13.24% | 6.50% |

Beginning with Contract year 6, at the start of each contract year, the Contractor may request to bill the Government using indirect rates that are below the provisional billing rates approved by the DCAA. The Contractor shall inform the Contracting Officer of the decision whether to use the provisional billing rates or an amount less than the provisional rates. At no time during the period of performance of this contract may the contractor request to bill the Government at a rate higher than the most current provisional billing rates approved by the DCAA.

For contract years 6 through 10 that the Contractor invoices at indirect rates below the provisional billing rates approved by the DCAA, the Contractor shall assume all

7

costs in excess of those billed. Any costs incurred above amounts invoiced shall be unallowable costs and shall not be billed to the Government under this or any other Government contract. In no instance shall the contractor retroactively request payment for costs incurred in any prior contract year as a result of unbilled costs to the Government in which billing rates lower than those approved by the DCAA were implemented.

This clause does not, in any way, guarantee that the Contractor will meet its future cost gate requirements.

(R4, tab 1C at 3)

16. In a March 21, 2013 "MEMORANDUM TO FILE," CO Marquez discussed Clause B.8:

The contractor's request was reviewed and it was determined that while an indirect ceiling would not be imposed on the contract, an agreement to allow the contractor to bill the Government at less than the DCAA's approved provisional billing rates would be established. Under this agreement, the contractor may propose their own rates to bill the Government; any costs invoiced above the established rates shall be considered unallowable.

(R4, tab 1C at 1)

*Modification No. 155*

17. Bilateral Modification No. 155, dated May 31, 2013, incorporated Clause B.8, "Agreement on Unallowable Costs," into the contract (R4, tab 1E). Modification No. 155 included release language:

In consideration of the modification agreed to herein as complete equitable adjustments for the Contractor's "provisional indirect billing rate proposal for adjustment," the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to the proposal for adjustment.

(*Id.*)

8

18. On December 21, 2016, L&M and the DCMA entered into an "INDIRECT COST RATE/ALLOCATION AGREEMENT...FOR FISCAL YEAR ENDED December 31, 2009" (R4, tab 2F at 3). The final rates agreed to were 50.30% Total Fringe, 19.09% Overhead, and 9.15% G&A (*id.* at 5). L&M was instructed to "adjust its interim billings on all affected contracts to reflect these agreed upon final indirect cost rates" (*id.* at 3). The agreement provided that if it conflicted with the contract, the contract would take precedence (*id.*).

19. On January 26, 2017, L&M submitted Indirect Rate Adjustment Invoice No. 613 in the amount of $511,448.85. The invoice covered the period of 01/01/2009 to 09/30/2009 (mostly during CY 2). A table showing the final rates and the provisional rates billed was included:

| DESCRIPTION | TOTAL FRINGE | OVERHEAD | G&A |
|---|---|---|---|
| Final agreed upon rate | 50.30% | 19.09% | 9.15% |
| Provisionally billed rate | 41.95% | 13.24% | 5.32% |

(R4, tab 2F at 2) On the same day L&M submitted Indirect Rate Adjustment Invoice No. 616 in the amount of $172,290.46. The invoice covered the period of 10/01/2009 to 12/31/2009 (completely during CY 2) and included the same rate information in Invoice No. 613 shown above. (*Id.* at 161)

20. On January 31 and February 3, 2017, NASA rejected Invoice Nos. 613 and 616 based on Clause B.8 which NASA felt established the rates for the subject year in its table (R4, tab 5 at 1, 4). By email dated January 31, 2017, to CO Procknow, L&M argued that the rate table in Clause B.8 did not apply because L&M billed at the DCAA-approved provisional billing rates. L&M wrote:

> The test for whether the ceiling rates apply depends on whether the billing rates used were lower than DCAA approved provisional billing rates. For 2009 DCAA approved provisional billing rates were utilized; therefore, ceiling rates would not apply.

(R4, tab 2H at 3-4)

21. CO Procknow responded on February 1, 2017, stating that she respectfully disagreed quoting from Clause B.8 and stating:

> The clause is not an "If," "then" statement. To paraphrase from your email below, "(If) 2009 DCAA approved

provisional billing rates were utilized, (then) ceiling rates would not apply." That is not the intent of the clause.

(R4, tab 2H at 2-3)

22. L&M responded to CO Procknow arguing:
> You have highlighted the second portion of the sentence but not the beginning which is where the crux of the matter lies. Page 2 of his letter contains the same language as below in the section titled "Provisional and Actual Billing Rates". This is to explain when the ceiling would apply. The contractor would use either DCAA provisional rates or something lower. If DCAA's provisional rates are used, no ceiling applies. If something lower than DCAA's billing rates are used, then the ceilings apply. The underlined green portion of the sentence was not true for 2009 therefore the yellow area does not apply nor do the ceilings.

(R4, tab 2H at 2) CO Procknow responded stating she submitted the matter to JSC legal office (*id.* at 1).

*L&M's Claim*

23. On June 20, 2017,[15] L&M submitted a certified claim for the payment of Invoice Nos. 613 and 616 in the total amount of $683,739.31 (R4, tab 2F at 1). On August 9, 2017, CO Procknow issued her final decision denying the claim (R4, tabs 3I-J). On November 1, 2017, L&M appealed the final decision to the Armed Services Board of Contract Appeals (ASBCA). On 2 November 2017, the ASBCA docketed the appeal as ASBCA No. 61397.

*Declarations*

24. Both parties submitted declarations with their Rule 11 reply briefs. L&M submitted a declaration by Ms. Antonette Montoya, CEO L&M Technologies, Inc., and included it in L&M's reply brief (app. supp. R4, tab 30). In her declaration, Ms. Montoya testified about the critical time after CO Rubio rejected Invoice No. 67. Shortly after NASA rejected Invoice No. 67, L&M met with NASA and NASA directed L&M to use the DCAA-approved 2008 provisional rates in its 2009 invoices and NF 533s because DCAA had not yet approved L&M's 2009 indirect rates. L&M complied with NASA's direction. (*Id.* at 2) In May 2009, L&M submitted its 2009 provisional

---

[15] The claim letter in the Rule 4 is undated, however, the June 20, 2017 date is in the CO's final decision (R4, tab 3I at 1).

rates to DCAA for approval. In June 2009, DCAA informed L&M it would approve billings that used L&M's 2009 estimated provisional rates until DCAA approved the 2009 rates. L&M informed NASA of this DCAA guidance. L&M's 2009 rates were approved by DCAA on July 15, 2009. Ms. Montoya stated that L&M still had to wait for NASA's approval to submit invoices and NF 533s using the 2009 DCAA-approved provisional rates, rather than the 2008 provisional rates. Until that point, L&M was required to bill under the contract using its 2008 DCAA-approved provisional rates. (*Id.*) Despite DCAA's approval of L&M's 2009 provisional rates in July 2009, NASA did not approve L&M's use of its 2009 DCAA-approved provisional rates for costs incurred during 2009 until September 2010. Accordingly, L&M's initial invoices and NF 533s submitted under the contract during fiscal year 2009 reflected L&M's 2008 DCAA-approved provisional rates, per NASA's direction. The only initial invoice and NF 533 which was submitted during 2009 with L&M's 2009 estimated provisional rates was in May 2009, just after L&M established its 2009 provisional rates. However, NASA rejected the May invoice (Invoice No. 67) because L&M's 2009 provisional rates had not yet been approved by DCAA. Even after DCAA approved L&M's 2009 provisional rates, L&M did not receive authorization from NASA to revise its billings that occurred during fiscal year 2009 to reflect the 2009 DCAA-approved provisional rates until September 2010. (*Id.*)

25. NASA submitted a declaration from CO Rubio. CO Rubio rejected Invoice No. 67 because L&M "improperly" used L&M's 2009 estimated provisional rates that had not been approved by DCAA. CO Rubio requested that L&M resubmit Invoice No. 67 using the DCAA-approved 2008 rates. (Gov't reply br., attach. B, Rubio decl. ¶ 5) CO Rubio did not indicate to L&M that her rejection of Invoice No. 67 "should be construed as a blanket rejection of any future invoices submitted with rate above the 2008 billing rates" (*id.* ¶ 6). CO Rubio did not direct L&M "to bill below the established billing rates" (*id.* ¶ 7). CO Rubio did not direct L&M "to suspend its application of the [2009] billing rates established on July 15, 2009 until it received my concurrence to utilize those rates" (*id.* ¶ 8).

## DECISION

*Positions of the Parties*

L&M argues that the unambiguous language of Clause B.8 only imposes the rate limitation listed therein if L&M invoiced at rates less than DCAA's approved provisional rates. L&M then contends that in 2009 NASA directed it to invoice using the 2008 DCAA-approved rates and it wasn't until September 2010 that NASA allowed L&M to invoice for the DCAA-approved 2009 rates. L&M did so with Invoice No. 200 that was paid. L&M contends that since NASA approved and paid Invoice No. 200, L&M did not bill below the 2009 DCAA-approved rates. L&M also contends that because its failure to invoice using its 2009 DCAA-approved rate during

11

2009 was directed by NASA, it should not be subject to the limitations in Clause B.8. (App. br. at 7-9; app. reply br. at 3-5)

NASA defends with three arguments. Recognizing that Modification No. 155, dated May 31, 2013, incorporated Clause B.8 into the contract after L&M had billed for CYs 1-5, NASA argues that since the rates billed were known at the time of Modification No. 155, the rate limitations in B.8 must have been intended to apply to CYs 1-5. (Gov't br. at 17-19) Second, NASA argues that since in 2009 L&M billed at the 2008 provisional rates, it billed below the 2009 provisional rates and the rate caps in Clause B.8 apply (*id*. at 20-24). NASA does not believe that the fact it approved and paid Invoice No. 200 changes the fact that during CY 2 L&M billed below 2009 DCAA-approved rates. NASA "vehemently rejects" the contention that it directed L&M not to use 2009 provisional rates in 2009. (Gov't reply br. at 6-7) Finally, NASA relies on the defenses of accord and satisfaction, waiver and release (gov't br. at 24-29).

*The Release and Other Affirmative Defenses*

In interpreting a release, general principles of contract interpretation apply. *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009). Contract interpretation is a question of law. *States Roofing Corp. v. Winter*, 587 F.3d 1364, 1368 (Fed. Cir. 2009). If the language of the release is clear and unambiguous it must be given its plain and ordinary meaning. *Id.* We need not go further into the law of contract interpretation because we find that the release in Modification No. 155 is clear and unambiguous.

Modification No. 155, dated May 31, 2013, incorporated Clause B.8 into the contract and contained a release. The release refers to a "provisional indirect billing rate proposal for adjustment." (Finding 17) NASA identifies the proposal for adjustment as L&M's April 22, 2013 rate cap proposal (gov't br. at 10, 29). L&M releases the "Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances *giving rise to the proposal for adjustment*" (finding 17) (emphasis added). In its brief NASA recognizes that this is the critical language in the release (gov't br. at 29). The language "facts and circumstances giving rise to the proposal" can only be interpreted to limit the release to "facts and circumstances" existing before the date of the "proposal for adjustment" or April 22, 2013. Any other interpretation effectively reads "giving rise to the proposal" out of the release. NASA has not identified specific "facts and circumstances" before April 22, 2013, that would prevent L&M from asserting its interpretation of Clause B.8. Indeed, the dispute over the proper interpretation of B.8 arose in 2017 when NASA rejected Invoice Nos. 613 and 616 based on its interpretation of Clause B.8 (finding 20). We do not see how this release could possibly preclude L&M from urging the Board to adopt its interpretation of Clause B.8. NASA's contention that the release somehow prevents L&M from litigating its interpretation of B.8, a question of law, is denied.

12

NASA's accord and satisfaction argument fails because we do not agree that Modification No. 155 "met the essential elements of an accord and satisfaction" (gov't br. at 25). Modification No. 155 did not settle a claim as argued by NASA. NASA's waiver argument fails because it relies on its interpretation of the release in Modification No. 155 that we found unpersuasive.

*Interpretation of Clause B.8*

The interpretation issue with Clause B.8 comes down to the proper interpretation of one sentence, "For contract years 1 through 5 *that* the Contractor invoiced at indirect rates below the provisional billing rates approved by the DCAA, the Contractor shall assume all costs in excess of the indirect rates in the table below" (finding 15) (emphasis added). L&M interprets this sentence to mean that the rate limitations listed in B.8 only apply if L&M invoiced indirect rates lower than DCAA's approved provisional rates (app. br. at 7-9). NASA interprets this sentence to mean that for CYs 1-5 L&M[16] may bill up to the rates listed in Clause B.8 and no more because the billing had already occurred before the date of Modification No. 155 (gov't br. at 16-17). NASA states, "To accept Appellant's position is to believe that it either did not know its own 2009 invoice rates in 2013 or knowingly negotiated the Clause with the intention of disregarding it" (*id.*). However, both parties knew that when they signed Modification No. 155 in 2013 the billing rates for 2009 were ascertainable. Even so they agreed to, "For contract years 1 through 5 that the Contractor invoiced at indirect rates below the provisional billing rates approved by the DCAA" (finding 15). For some reason both parties chose to put off resolution of the matter, perhaps because the final rates were not agreed to until December 21, 2016. Who knows?

We agree with L&M's interpretation of Clause B.8.[17] "An interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous." *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). NASA's interpretation leaves the first sentence, second paragraph, particularly the word "that," inexplicable, or superfluous. The language gives L&M the discretion to bill at the DCAA-approved

---

[16] On July 13, 2018, the Board issued an order directing clarification requiring the parties to answer four questions. In response to the second question, both parties agreed that CY 2 included January and February 2010.

[17] Neither party discussed the fact that DCAA approval of L&M's 2009 provisional rates did not occur until July 15, 2009 (finding 7) and how that might affect the interpretation of Clause B.8. Since this made it impossible for L&M to invoice at the approved rates in the early part of the year, it is consistent with our view of Clause B.8, that the referenced invoicing by L&M was not limited to the initial invoices submitted by the company, but included all invoices submitted prior to the execution of B.8.

13

provisional rates or lower rates. L&M is only limited to the rates listed in B.8 if it chose to bill at rates lower than the DCAA-approved provisional rates. We consider this language to be clear and unambiguous. Resorting to extrinsic evidence to interpret clear and unambiguous language is precluded by the parole evidence rule which requires that a "clear written agreement...be interpreted to mean what it says, notwithstanding contrary extrinsic evidence." *Keco Indus., Inc.*, ASBCA No. 50524, 00-1 BCA ¶ 30,857 at 152,332-33 (quoting *Bradley Constr., Inc.*, ASBCA Nos. 43891, 43892, 95-2 BCA ¶ 27,647 at 137,814). Contrary to CO Procknow's interpretation, Clause B.8 is an "If," "then" statement (finding 21).

*CY 2 Billing Rates*

Our decision comes down to what seems would be a straightforward factual question of what rates did L&M bill for CY 2. It turns out not to be straightforward at all, but we conclude that, after L&M submitted invoices less than the DCAA-approved rates at the government's direction, it submitted later invoices bringing the total sought to the DCAA-approved rate.

On May 4, 2009, L&M submitted its 2009 estimated provisional rates to DCAA for approval (finding 3). On May 15, 2009, L&M submitted Invoice No. 67 in an attempt to recover the difference between the 2008 provisional rates it had billed for January 1, 2009 to April 24, 2009 and L&M's 2009 estimated provisional rates for that period. L&M's 2009 estimated provisional rates were $41.95% Total Fringe, 13.24% Overhead, and 5.32% G&A. On May 28, 2009, NASA rejected Invoice No. 67 because DCAA had not approved the 2009 provisional rates. (Finding 5) This seems to be in conflict with the May 13, 2009 conversation between CO Rubio and Mr. Silva where it appeared that CO Rubio agreed that L&M could start invoicing using its 2009 estimated provisional rates (finding 4).

On June 3, 2009, L&M notified NASA that DCAA had agreed that L&M could invoice at its 2009 estimated provisional rates before DCAA issued its final approval (finding 6). However, the monthly NF 533s illustrate that for June and July 2009 L&M continued to bill at the 2008 DCAA-approved rates (finding 8).

On July 15, 2009, DCAA approved L&M's 2009 provisional rates as 41.95% Total Fringe, 13.24% Overhead, and 5.32% G&A (finding 7). These were the same rates as L&M's 2009 estimated provisional rates. However, the monthly NF 533s show that L&M continued to bill at the 2008 DCAA-approved rates for the remainder of CY 2. (Finding 8)

We know that CO Rubio would not allow L&M to bill using its 2009 estimated provisional rates because CO Rubio rejected Invoice No. 67, which attempted to do just that (finding 5). Therefore, for CY 2 months March to June CO Rubio would not allow L&M to bill at its estimated provisional rates. L&M billed at the 2008 DCAA-approved rates for

14

March to June. This is below the 2009 DCAA-approved rates. The focus shifts to the months of July 2009 to March 2010, the remaining months of CY 2. During these months there were 2009 DCAA-approved provisional rates, but L&M continued to bill using the 2008 rates. That means, for those months, L&M also billed below DCAA-approved provisional rates subjecting itself to the Clause B.8 caps. It would seem that L&M billed below 2009 DCAA-approved rates during the entirety of CY 2.

*Why L&M Billed Below the DCAA-approved Rates During CY 2[18]*

Both parties submitted a declaration. Ms. Montoya, CEO L&M, stated in her declaration that the reason L&M invoiced using the 2008 DCAA-approved provisional rates in CY 2, was because NASA, CO Rubio, directed L&M to do so (finding 24). CO Rubio stated in her declaration that she rejected Invoice No. 67 because L&M "improperly" used L&M's 2009 estimated provisional rates that had not been approved by DCAA, and she directed L&M to resubmit using the 2008 DCAA-approved rates. She stated that she did not, however, direct L&M not to use the 2009 DCAA-approved rates after they were approved on July 15, 2009. (Finding 25)

We have two declarations presenting diametrically opposed testimony on the material facts of this case. Since this is a record submission there was no hearing and no transcript presenting direct and cross-examination to assist the Board in deciding which declaration is more credible. This is a difficult task because each declaration is plausible. We agree with NASA's statement, "It is difficult to believe that such a critical directive would not have been formally captured by the Parties" (gov't reply br. at 8). While the alleged direction is not captured directly, there are contemporaneous documents that shed light on this question.

We found above that L&M invoiced using 2008 DCAA-approved rates in CY 2. We resolve the conflicting declarations using contemporaneous documents. On May 6, 2010, CO Rubio emailed L&M asking questions about provisional rates (finding 9). NASA refers to this email in its reply brief as evidence that "the NASA CO was unaware of which rates Appellant was using" (gov't reply br. at 8). This argument ignores the fact that L&M was submitting monthly NF 533s to NASA, attention contracting officer, with the 2008 provisional rates clearly listed (finding 8). NASA fails to discuss two additional documents in the email chain, L&M's response and NASA's reply. L&M, Ms. Montoya, responded by letter dated May 10, 2010, and stated

---

[18] Under our interpretation of Clause B.8, it does not matter when L&M invoiced for CY 2 so long as it was before the execution of B.8. Thus, why L&M initially billed below the DCAA-approved rates is not strictly material, either. Nevertheless, we discuss it here because it adds context to the parties' positions while they were negotiating Clause B.8. and it underscores the impossible position that L&M would have been in if we accepted the government's proffered interpretation of that clause.

15

that it was not using its 2009 rates in its invoices or NF 533s based on NASA's direction. Ms. Montoya stated that the direction was given in April 2009 and meetings on June 18th and 30th and "[s]ince then we understood from a number of conversations that the rate adjustments would be dealt with after the REA was resolved." (Finding 10) CO Rubio responded immediately but significantly did not take issue with L&M's statements that NASA directed it not to use its 2009 rates in CY 2 (finding 11). The most important statement in L&M's May 10, 2010 letter is the reference to the REA. The REA is not in the record and neither party discussed it so we know little about it except that NASA sent L&M a draft of the REA modification on May 12, 2010 (*id.*). This means the REA remained unresolved well past July 2009 when DCAA approved L&M's provisional rates. The other meetings cited occurred before DCAA approved L&M's 2009 provisional rates so L&M's statement about the REA is particularly important.

If L&M's statements in its May 10, 2010 letter were not correct we would expect CO Rubio to say something. We expect that CO Rubio would object to L&M's assertions and respond saying she did not direct L&M to invoice using 2008 DCAA-approved rates during CY 2 as she did in her declaration. All CO Rubio did in her reply was ask L&M to "concur that you are reporting on the 533 and invoicing for provisional rates ('08) just not '09 rates?" (Finding 11) This request is consistent with L&M's letter. CO Rubio's failure to object or otherwise challenge L&M's contention that on two specific dates and at other times CO Rubio directed it not to invoice using 2009 rates tips the scale in L&M's favor. These May 2010 documents are the only contemporaneous evidence in the record we can find that allows us to select the more credible declaration.

We find that the May 2010 contemporaneous documents corroborate Ms. Montoya's declaration. Therefore, we find Ms. Montoya's declaration is the more credible. We conclude that on this record, L&M did not invoice using 2009 DCAA-approved rates because NASA directed it not to. Apparently the first opportunity for L&M to bill using the 2009 rates was on September 14, 2010, when it submitted Invoice No. 200 correcting the under billing for 2008, 2009 and 2010 (finding 12). Invoice No. 200 covered all of CY 2 which ran from March 2009 to February 2010 (finding 1). This was over two years before Modification No. 155 incorporated Clause B.8 into the contract (finding 17).

Clause B.8 is silent about when the contractor's invoice must be submitted, "For contract years 1 through 5 that the Contractor invoiced at indirect rates below the provisional billing rates approved by the DCAA" (finding 15). Nothing in the clause directs us to consider the invoices itemized in the NF 533s (finding 8) to take precedence over Invoice No. 200 that bills at the higher 2009 rates and was paid by NASA (finding 12). Taking into consideration that it was NASA's direction that prevented L&M from invoicing at the 2009 rates earlier, we hold that Invoice No. 200 satisfies the B.8 requirement that L&M invoice at the approved provisional rated listed in the clause in order to receive any increase in rates when DCAA approves the final indirect rates. For that reason we conclude

16

that the rate cap in Clause B.8 does not apply and L&M may recover any increase in its final rates over approved provisional rates.

## CONCLUSION

In accordance with the above, L&M's appeal is sustained. The matter is remanded to the parties to determine quantum.

Dated: November 20, 2018

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61397, Appeal of L&M Technologies, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

17